Filed: March 20, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 99-2255
(CA-97-256-3-MU)

Lyons Partnership, etc.,

Plaintiff - Appellant,

versus

Morris Costumes, Inc., et al.,

Defendants - Appellees.

O R D E R

The court amends its opinion filed March 16, 2001, as follows:

On page 20, second full paragraph, line 2, and page 21, first paragraph, line 7 -- the references to "Lisa Morris Smith" are corrected to read "Amy Morris Smith."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

LYONS PARTNERSHIP, L.P., a Texas
Limited Partnership,
Plaintiff-Appellant,

v.                                                          No. 99-2255

MORRIS COSTUMES, INCORPORATED;
PHILIP MORRIS; AMY MORRIS SMITH,
Defendants-Appellees.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-97-256-3-MU)

Argued: December 4, 2000

Decided: March 16, 2001

Before NIEMEYER, WILLIAMS, and TRAXLER, Circuit Judges.

_____

Affirmed in part, reversed in part, vacated in part, and remanded by
published opinion. Judge Niemeyer wrote the opinion, in which Judge
Williams and Judge Traxler joined.

_____

COUNSEL

ARGUED: Mack Sperling, BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina, for
Appellant. Jay Scot Bilas, MOORE & VAN ALLEN, P.L.L.C., Char-
lotte, North Carolina, for Appellees. ON BRIEF: Hubert Humphrey,

David Sar, BROOKS, PIERCE, MCLENDON, HUMPHREY &
LEONARD, L.L.P., Greensboro, North Carolina, for Appellant.
George V. Hanna, III, M. James Grode, MOORE & VAN ALLEN,
P.L.L.C., Charlotte, North Carolina, for Appellees.

_____

## OPINION

NIEMEYER, Circuit Judge:

The owner of "Barney," the famous purple dinosaur who speaks in
a distinctive baritone, seeks, through this action for injunctive relief
and damages, to end the marketing of three look-alike costumes that
children allegedly believe are in fact Barney. The district court recog-
nized the plaintiff's intellectual property rights in the Barney charac-
ter but denied their enforcement against a costume rental company
because (1) the first act of infringement occurred outside of the statute
of limitations period; (2) the claims were in any event barred by
laches; and (3) confusion as to one of the costumes existed only
among young children and not among the adults who rented the cos-
tume. After considering the district court's comprehensive rulings, we
affirm in part, reverse in part, vacate in part, and remand. Our reasons
follow.

I. <u>Background</u>

Lyons Partnership, L.P., ("Lyons"), a Texas limited partnership,
owns all of the intellectual property rights to the character "Barney,"
the well-stuffed Tyrannosaurus Rex with a green chest and stomach,
friendly mien, green spots on its back, and yellow "toeballs." Barney
is readily recognizable to young children, who repeatedly parrot his
song, "I Love You,"[1] often testing the patience of nearby adults.

_____

[1] Many can recite only the first three lines of the song:

> I love you.
> You love me.
> We're a happy family.
> With a great big hug and a kiss from me to you,
> Won't you say you love me too?

Lyons' predecessor developed Barney as a plush stuffed animal in 1988, and in connection with that process, it prepared three video-tapes featuring the character.

On April 5, 1992, Barney made his debut on the Public Broadcasting System, and, Lyons claims, the result was "absolutely unprecedented." Barney became hugely popular with children almost instantly. At an early appearance of Barney at a mall in Dallas, Texas, promoters expected a few hundred people to appear to see him. Instead, people started lining up before the mall opened, and by the time Barney arrived, 35,000 had formed a line that extended for one and a half miles. Now, the "Barney and Friends" show is viewed weekly by 14 million children, and over 50 million copies of Barney-related videos have been sold. The "Barney and Friends" show enjoys the number one Nielsen rating for shows directed at young children. Adults rarely watch the program except with their children.

The live appearance of the Barney character, who is played by adults in costume, is completely controlled by Lyons, and Lyons does not license Barney costumes because of its inability to police the behavior of those who might appear in the costume. It claims that it would be unable to prevent would-be Barneys from behaving in a decidedly un-Barney-like manner and tarnishing his wholesome reputation. Cf. Zack Van Eyck, Take a Deep Breath: Barney Has Hit the Big Screen, Deseret News Today, Apr. 3, 1998, at C2 (describing the satirical treatment of Barney look-alikes by such notables as Charles Barkley and the Famous Chicken). Accordingly, every person who wears the costume -- there are five -- is trained by a single choreographer how to be Barney. Moreover, Barney's live voice is provided by only one person. Lyons not only refuses to license Barney costumes, but also has waged a legal campaign against retailers that have distributed allegedly infringing costumes. See Brooke A. Masters, Protecting Barney's Image from Bogus Beasts, Wash. Post, Mar. 25, 1998, at B1. Lyons does, however, license the Barney image on toys, books, clothing, and the like.

To protect its intellectual property, Lyons has registered approximately 25 trademarks and obtained hundreds of copyrights with respect to the name "Barney" and the character's depiction.

3

On May 2, 1997, Lyons commenced this action against Morris Costumes, Inc., Philip Morris, and Amy Morris Smith, alleging copyright and trademark infringement, as well as a state law violation. Morris Costumes is a North Carolina corporation, operating a retail costume-rental establishment in Charlotte, North Carolina. Philip Morris and his wife Amy Morris Smith are the principal stockholders of the corporation and are alleged in the complaint to have participated in the infringing conduct. The complaint, as amended, alleges that the defendants rented three different forms of costume to the public, each of which looked like Barney and therefore violated Lyons' proprietary interests in Barney: (1) the "NDC costume," a purple dinosaur costume manufactured by National Discount Costume Company and sold to Morris Costumes for rental or resale; (2) "Hillary the Purple Hippopotamus," an NDC costume that Morris Costumes altered; and (3) "Duffy the Dragon," a purple reptilian costume manufactured by Alinco Costumes, Inc. The complaint requested that the court grant Lyons injunctive relief, statutory damages, compensatory damages, treble damages, punitive damages, attorneys fees, and other "proper relief."

After a four-day bench trial, the district court entered judgment in favor of the defendants on all claims. In a detailed opinion, in which the court made 240 separately numbered findings of fact and conclusions of law, the court concluded that the NDC and Hillary costumes infringed Lyons' copyrights and trademarks. The court, however, denied Lyons a remedy because it found that the claims with respect to the NDC and Hillary costumes were barred by the applicable statutes of limitations and by the doctrine of laches. The court held that the four-year lapse between the time when Lyons first became aware of Morris' acts of infringement and the commencement date of the lawsuit was "inexcusable." On the claims relating to the Duffy the Dragon costume, the court found that the evidence was inadequate to show that Duffy was substantially similar to or likely to cause confusion with the Barney character. In reaching this conclusion, the court disregarded as hearsay the first-hand accounts of adults about children who believed that Duffy was in fact Barney and over 30 newspaper articles evidencing actual confusion between Duffy and Barney. On Lyons' state law unfair trade practices claim, the court again found in favor of the defendants because the "infringing activities were not undertaken with the intent that the public would be deceived as to the

4

true origin of the costumes." Finally, the court found that the action against Amy Morris Smith was in bad faith because of her minimal involvement and the untimeliness of claims against her, and, on that basis, ordered Lyons to pay her attorneys fees.

From the judgment entered for the defendants, Lyons noticed this appeal.

II. NDC and Hillary costumes

On Lyons' claims relating to Morris Costumes' rentals of the NDC and Hillary costumes, the court found that the defendants infringed both Lyons' copyrights and trademarks, though it also found that the infringements were not willful. The court refused, however, to provide Lyons with any remedy because it determined that Lyons' claims were barred by both the applicable statutes of limitations and laches. The court also concluded that, in any event, Lyons did not prove that the infringement was willful and that injunctive relief was no longer necessary because Morris Costumes was no longer renting the infringing costumes. Lyons challenges each of these rulings, and we address them in order.

A

The limitations period for bringing copyright infringement claims is three years after the claim accrues. See 17 U.S.C. § 507(b); Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199, 202 (4th Cir. 1997). And a claim accrues when "one has knowledge of a violation or is chargeable with such knowledge." Hotaling, 118 F.3d at 202 (internal quotation marks and citations omitted).

While the Lanham Act itself does not provide an express period of limitations for filing a trademark infringement claim, courts generally assume that Congress intended that courts "borrow" a limitations period for a federal action at law from an analogous state law. See Reed v. United Transp. Union, 488 U.S. 319, 323-24 (1989); Wilson v. Garcia, 471 U.S. 261, 266-67 (1985); Holmberg v. Armbrecht, 327 U.S. 392, 395 (1946); Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1999). In this case, the

5

district court borrowed the four-year statute of limitations provided in the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-16.2, a provision that the parties agree is appropriately analogous.

In applying these statutes of limitations, the district court found that Lyons "had knowledge of Defendants' actions regarding NDC in April, 1993, more than four years before it filed the above encaptioned matter." Lyons filed its complaint in this case on May 2, 1997. Because this four-year span exceeded the three- and four-year statutes of limitations for copyright and trademark claims, the court held that the statutes of limitations barred all of Lyons' claims involving the NDC and Hillary costumes.

Although Morris Costumes' liability for at least some of the alleged acts of infringement appears to have been shielded by the statute of limitations, the district court ruled that this fact barred even claims based on infringing activity shown to have occurred within the limitations period. In doing so, it assumed that Morris Costumes' "actions regarding NDC and Hillary comprise one act of infringement." This assumption, however, is contrary to our holding in Hotaling, see 118 F.3d at 202, in which we made clear that each sale or rental should be considered separately under an infringement analysis. We held that a "party does not waive the right to sue for [copyright] infringements that accrue within three years of filing by not asserting related claims that accrued beyond three years." Id. at 202. This well established rule recognizes that the statute of limitations does not shield the defendant from liability for wrongful acts actually committed during the limitations period, and its rationale applies equally to trademark infringement claims brought under the Lanham Act.

Thus, although the district court was correct to hold that Lyons could not "recover for claims that accrued outside the limitations period[s]," Hotaling, 118 F.3d at 202, it erred to the extent that it dismissed Lyons' claims that were premised upon acts that occurred within the applicable periods. Because the parties agree that numerous rentals occurred within the relevant limitations periods, we reverse the district court's ruling that all claims based on the NDC and Hillary costumes were barred by the applicable statutes of limitations.

6

B

In its brief on appeal, Morris Costumes does not make a serious attempt to defend the district court's statute of limitations analysis. Instead, it relies most heavily on its alternative theory that Lyons' claims were barred by laches because the four-year delay between Lyons' initial contact with Morris and its filing of the lawsuit was unreasonable, inexcusable, and prejudicial. Lyons responds with the argument that the district court misapplied the standards governing the laches doctrine. See generally A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1032-33 (Fed. Cir. 1992) (setting out one statement of the standards); see also Potter Instrument Co. v. Storage Tech. Corp., 641 F.2d 190, 191 (4th Cir. 1981) (noting that "invocation of . . . laches . . . is within the sound discretion of the district court and will be reversed only if clearly erroneous").

While we agree with Lyons that the district court erred as a matter of law when it found that laches barred Lyons' claims, both legal and equitable, we do so for more fundamental reasons. First, laches is a doctrine that applies only in equity to bar equitable actions, not at law to bar legal actions. Second, we note that, in any event, in connection with the copyright claims, separation of powers principles dictate that an equitable timeliness rule adopted by courts cannot bar claims that are brought within the legislatively prescribed statute of limitations. Finally, even in equity under the Lanham Act, laches does not bar a claim for prospective injunctive relief.

The doctrine of laches is based on the maxim that equity aids the vigilant, not those who sleep on their rights.[2] See Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 259 (2d Cir. 1997). Laches may be applied by a court to bar a suit in equity that has been brought so long after the cause of action accrued that the court finds that bringing the action is unreasonable and unjust. See id. The fuzziness of these equitable principles and the softness of their application, see Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982); Holmberg, 327 U.S. at 396 (Frankfurter, J.) ("Equity eschews mechanical rules;

_____

[2] Vigilantibus non dormientibus aequitas subvenit. But also note, aequitas ignorantiae opitulatur, oscitantiae non item (equity assists ignorance, but not carelessness).

7

it depends on flexibility"), while maybe apropos for the apparently soft and fuzzy Barney, nonetheless provide no defense of laches for his actions at law. See County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 244 n.16 (1985) ("[A]pplication of the equitable defense of laches in an action at law would be novel indeed"); United States v. Mack, 295 U.S. 480, 489 (1935) (Cardozo, J.) ("Laches within the term of the statute of limitations is no defense at law"); Ivani Contracting, 103 F.3d at 260; Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 168-69 (8th Cir. 1995). And the fact that Federal Rules of Civil Procedure 1 and 2 merged law and equity for procedural purposes -- Rule 2, for example, provides that "[t]here shall be one form of action to be known as `civil action'" -- does not alter the substantive rights inherent in law and equity. See Commercial Nat'l Bank v. Parsons, 144 F.2d 231, 240-41 (5th Cir. 1944) (noting that despite the rules' merger of law and equity as to form, the substantive difference in federal judicial power between law and equity remains embedded in federal law).

Moreover, because laches is a judicially created doctrine, whereas statutes of limitations are legislative enactments, it has been observed that "[i]n deference to the doctrine of separation of powers, the [Supreme] Court has been circumspect in adopting principles of equity in the context of enforcing federal statutes." Oneida Indian Nation, 470 U.S. at 262 n.12 (Stevens, J., dissenting in part) (relying generally on Weinberger, 456 U.S. 305); see also Holmberg, 327 U.S. at 395 ("If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive"). Consequently, when considering the timeliness of a cause of action brought pursuant to a statute for which Congress has provided a limitations period, a court should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute. Separation of powers principles thus preclude us from applying the judicially created doctrine of laches to bar a federal statutory claim that has been timely filed under an express statute of limitations. See Ivani Contracting, 103 F.3d at 260; Ashley, 66 F.3d at 168-69; Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 586 (9th Cir. 1993). And this principle is equally relevant when Congress creates a cause of action for traditional equitable remedies, such as injunctions, and specifies a statute of limitations for that action. Thus, when Congress creates

8

a cause of action and provides both legal and equitable remedies, its statute of limitations for that cause of action should govern, regardless of the remedy sought.

A relevant example is provided by the Copyright Act, where Congress created a civil action by which plaintiffs may seek both damages and injunctive relief. See 17 U.S.C. §§ 502, 504. And in a limitations provision, it provides, "No civil action shall be maintained under the provisions of this Title unless it is commenced within three years after the claim accrued." Id. § 507(b) (emphasis added). In view of such a provision, a court is not free to shorten the limitations period, even when a plaintiff seeks equitable relief.

But, of course, the doctrine of laches may be applied to equitable claims brought under the Lanham Act, which contains no express limitations provision. See Holmberg, 327 U.S. at 395. When federal courts, in the exercise of their equitable power, consider laches, they are guided by the limitations period that they would borrow for actions at law and presume that if an equitable claim is brought within the limitations period, it will not be barred by laches. See Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 461 (4th Cir. 1996); Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 821 (7th Cir. 1999); Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996); Tandy Corp. v. Malone & Hyde, Inc., 769 F.2d 362, 365-66 (6th Cir. 1985). But if the claim is one for injunctive relief, laches would not apply. A prospective injunction is entered only on the basis of current, ongoing conduct that threatens future harm. Inherently, such conduct cannot be so remote in time as to justify the application of the doctrine of laches. See Sara Lee, 81 F.3d at 461 ("[I]n consideration of the public interest, estoppel by laches may not be invoked to deny injunctive relief if it is apparent that the infringing use is likely to cause confusion" (citing 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 31.04[1] (3d ed. 1995))).

C

Because not all of the claims relating to the NDC and Hillary costumes are time-barred, we must consider whether Lyons is entitled to a remedy in connection with these claims.

9

At trial, Lyons did not seek to prove actual damages and does not, therefore, press any claim for such damages. It did, however, elect statutory damages under the Copyright Act, which provides that the copyright owner is entitled to either actual damages or "statutory damages." See 17 U.S.C. § 504(a). The election for statutory damages must be made before final judgment is rendered. See id. § 504(c)(1). In its complaint, Lyons demanded statutory damages, and it apparently never abandoned that claim, because at trial it not only chose not to present evidence of actual damages, but it also sought to prove that the defendant's conduct was willful, thereby entitling it to enhanced statutory damages. See id. § 504(c)(2).

Under 17 U.S.C. § 504(c)(1), a copyright owner is entitled to statutory damages of not less than $500 or more than $20,000 for infringement of "any one work," "as the court considers just." If the copyright owner, however, is able to prove that infringement was committed willfully, the court is given discretion to increase the award of statutory damage to a sum not more than $100,000. See id. § 504(c)(2). On the other hand, if the copyright owner is only able to prove that "such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court, in its discretion, may reduce the award of statutory damages to a sum not less than $200." Id. While we review for clear error any factual finding that would determine the appropriate level of statutory damages, we would review an award of those damages within the statutory range for abuse of discretion. See Superior Form Builders, Inc. v. Chase Taxidermy Supply Co., 74 F.3d 488, 496 (4th Cir. 1996).

In this case, the district court found that the defendant's infringement was not willful, and we conclude that the court's finding is not clearly erroneous. Although the Copyright Act does not define willful infringement, other circuits have held that infringement is willful if the defendant "has knowledge," either actual or constructive, "that its actions constitute an infringement," Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1115 (2d Cir. 1986), or recklessly disregards a copyright holder's rights, see N.A.S. Import Corp. v. Chenson Enterprises, 968 F.2d 250, 252 (2d Cir. 1992); see also RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 779 (8th Cir. 1988) (holding that a defendant does not act willfully within the meaning of the statute if he believes in good faith that his conduct is

10

innocent). In this case, substantial evidence supports the district court's finding that Morris Costumes neither knew nor should have known that it was infringing Lyons' copyrights. For example, an investigator hired by Lyons was repeatedly told by a Morris Costumes employee that Morris Costumes did not rent Barney costumes. Perhaps more significantly, evidence in the record established that Morris Costumes ceased distribution of the NDC costumes in 1994 and replaced that costume with the modified version-- the Hillary costume -- a work that, while eventually found to be infringing, was also found by the district court to "reflect a serious attempt to create a new work with clearly identifiable female characteristics," such as a dress, red cheeks, and long eyelashes. Despite the presence of evidence pointing toward the opposite conclusion, such as Morris Costumes' receipt of Lyons' cease-and-desist letter, the district court did not clearly err when it held that the distribution of the NDC and Hillary costumes was not willful infringement.

Even with our affirmance of the district court's willfulness ruling, however, in view of our rulings on limitations and laches, the district court is left with the determination of whether lesser statutory damages should be awarded under 17 U.S.C. § 504(c).

D

Lyons also appeals the district court's decision not to issue an injunction prohibiting Morris Costumes from distributing infringing costumes in the future. The court wisely did not rely on laches to bar injunctive relief because laches may not be invoked to deny injunctive relief that otherwise would appear appropriate. Rather, the district court concluded that Morris Costumes' "voluntary cessation of all activities concerning the costumes at issue" rendered the injunction unnecessary. We believe that this statement misconstrues the legal principles applicable to the issuance and denial of injunctions.

As we have noted in the past, "it is well established that the voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit." United States v. Jones, 136 F.3d 342, 348 (4th Cir. 1998) (citing Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 71-72 (1983) (per curiam)). That rule is subject to the caveat that an injunction is unnecessary when "there is no reasonable expectation

11

that the wrong will be repeated." <u>United States v. W.T. Grant Co.</u>, 345 U.S. 629, 633 (1953) (emphasis added) (quotation marks and footnote omitted); <u>see also County of Los Angeles v. Davis</u>, 440 U.S. 625, 631 (1979). But this exception is just that -- an exception -- and defendants "face a heavy burden to establish mootness in such cases because otherwise they would simply be free to `return to [their] old ways' after the threat of a lawsuit has passed." <u>Iron Arrow</u>, 464 U.S. at 72 (alteration in original) (quoting <u>W.T. Grant</u>, 345 U.S. at 632).

In the case before us, the defendants did not meet this heavy burden. Philip Morris testified that the reason why he stopped renting the Hillary costume several months before this action was commenced was because of the suit that Lyons filed against the manufacturer of the NDC costume, the costume on which Hillary was based. Even though he stopped renting to see how that litigation fared, he continued to maintain that the Hillary costume was in fact not an infringing costume. Morris Costumes did not make an affirmative showing that continuing infringement was, practically speaking, nearly impossible. Despite this state of the record, the district court, in finding an injunction unnecessary, required no more than the defendants' bald assertions that they would cease distributing the costumes and would hand over those costumes remaining in their possession following the termination of the litigation. In the context of an infringement action, such assertions, standing alone, cannot eliminate the plaintiff's "reasonable expectation that the alleged violation will recur" in the absence of a court order. <u>Davis</u>, 440 U.S. at 631 (internal quotation marks omitted). Accordingly, Lyons was entitled to an injunction.

We therefore reverse the district court's ruling denying Lyons an injunction in the face of its findings of infringement and remand with instructions that the district court enter an injunction prohibiting the illegal conduct.

III. <u>Duffy the Dragon costume</u>

The district court held that, in contrast to the NDC- and Hillary-based claims, Lyons' causes of action with respect to the Duffy the Dragon costume were not time-barred under either a statute of limitations or laches theory, but the court found that Morris Costumes did not infringe Lyons' copyrights and trademarks in Barney when it dis-

12

tributed the Duffy costume. Lyons contends that the court's findings were based on legal error because it (1) applied an inappropriate legal standard for finding "substantial similarity" under the Copyright Act claim; and (2) wrongly excluded as hearsay evidence of children's reactions to the Duffy costume, as well as newspaper articles evidencing confusion, in considering the Lanham Act claim. We address these points in order.

A

The district court found that Morris Costume's distribution of the Duffy costume did not infringe Lyons' copyrights because, in its words, Duffy "is not subjectively, intrinsically similar to the Barney character" when viewed from the perspective of "the average adult renter or purchaser of these costumes." We agree with Lyons that this exclusive focus upon the average adult's perspective is too narrow and fails to apply the established copyright principles of this circuit.

To establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied the original elements of that copyright. See Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 143 (4th Cir. 2000) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). When the plaintiff possesses no direct evidence that the defendant copied its protected work, it may create a presumption of copying by indirect evidence establishing that the defendant had access to the copyrighted work and that the defendant's work is "substantially similar" to the protected material. See Towler v. Sayles, 76 F.3d 579, 581-82 (4th Cir. 1996). Proof of substantial similarity requires resort to yet another two-part analysis. First, the court must determine whether the two works are "extrinsically similar because they contain substantially similar ideas that are subject to copyright protection." Id. at 583. And second, the court must ask whether the works are "intrinsically similar" in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work. See id. at 583-84. The notion of intrinsic similarity can be a slippery one because it requires the court to inquire into "the `total concept and feel' of the works," but only as seen through the eyes of the ordinary observer. Dawson v. Hinshaw Music, Inc., 905 F.2d 731, 733 (4th Cir. 1990). This ordinary observer is to be a member of "the

13

intended audience of the plaintiff's work." Id. at 736. In most cases, when a copyrighted work will be directed at the public in general, the court need only apply a general public formulation to the intended audience test. See id. at 736-37. But when it is clear that the work is intended for a more particular audience, the court's inquiry must be focused upon the perspectives of the persons who comprise that group. See id.

In determining that Morris Costumes' sales of the Duffy costume did not violate the Copyright Act, the district court found that Barney and Duffy were extrinsically similar but not intrinsically similar. That finding was based upon the court's conclusion that the intended audience of the Duffy costumes was "the average adult renter or purchaser of those costumes because that person is the one who would actually decide whether to obtain the costumes." The court reasoned that the perspectives of children were irrelevant because"there is no evidence in the record that children directly influenced any purchase or rental decisions regarding Defendants' costumes." Rather, "[c]hildren were only able to view Defendants' costumes after an adult obtained them." Accordingly, the district court held, because the average adult would not believe that Duffy and Barney were intrinsically similar, Lyons had not proven that Morris had engaged in copying, and thus had not established a claim under the Copyright Act.

The evidence of actual confusion among children, however, which the court disregarded, was substantial. An elementary school administrator testified that her school rented the Duffy costume for a school rally called "Character Counts," because Barney exemplified the qualities that the rally intended to communicate. When the administrator appeared without advance notice before 500 children in the Duffy costume, the children saw Barney. As she testified, "the kids just went wild. They went crazy and they were just going,`Barney. Barney. Barney.'" Also, various parents testified that they rented Duffy knowing that it would be perceived by children as Barney, and in each case the children so perceived Duffy as Barney. In addition to this evidence of actual confusion among children, Lyons offered over 30 newspaper clippings from around the country in which persons wearing the Duffy costume were depicted but the newspaper reported them as "Barney." None of the papers reported an awareness of its error.

14

We conclude that the district court's limiting of the intended audience to the adult renters and purchasers directly conflicts with our decision in Dawson, in which we first articulated the "intended audience" rule. In Dawson, we held that, in evaluating whether two works of music were intrinsically similar, the district court should have considered whether the works' intended audience possessed "specialized expertise, relevant to the purchasing decision, that lay people would lack," and if so, whether that specialized audience, rather than the ordinary lay observer, would find the works to be substantially similar. 905 F.2d at 736. Likewise, the similarity of child-oriented works "must be viewed from the perspective of the child audience for which the products were intended." Id. at 735; Atari, Inc. v. N. Am. Phillips Consumer Electronics Corp., 672 F.2d 607, 619 (7th Cir. 1982); Sid & Marty Krofft Television Prods. v. McDonald's Corp., 562 F.2d 1157, 1166-67 (9th Cir. 1977).

The Dawson court adopted the "intended audience" rule, as opposed to an "ordinary observer" rule, because copyright law, at its core, is intended only to protect the creator's economic market and resulting financial returns. See Dawson, 905 F.2d at 733-34 (citing Arnstein, 154 F.2d at 473). Accordingly, the relevant question that courts must ask in determining whether a work has been copied is not whether society as a whole would perceive the works to be similar in an aesthetic sense, but rather whether the works are so similar that the introduction of the alleged copy into the market will have an adverse effect on the demand for the protected work. Put more directly, copyright law is concerned with those "knock-offs" that could actually diminish a copyright owner's profits, and that threat only arises when the owner's customers or potential customers believe that the new work is in fact a "copy."

In this case, all of the relevant evidence tended to show that the target for both the Barney and Duffy characters was an audience consisting of young children. Lyons states more particularly that it targets children from ages two to five. Accordingly, the economically important views are those of the young children who watch Barney on television, wear t-shirts bearing his likeness, and desperately hope that the purple dinosaur will make an appearance at their birthday parties. Even if adults can easily distinguish between Barney and Duffy, a child's belief that they are one and the same could deprive Barney's

15

owners of profits in a manner that the Copyright Act deems impermissible. We can only surmise the economic impact that would be felt by Lyons in its future sales of copyrighted materials if Duffy, mistaken by children for Barney, were to conduct himself (outside of a parodic context) in a manner that undermined the image that Lyons had created in Barney. Such a "Barney" at the mall, at school, or at local promotions might quickly erode the good will of the true Barney on PBS and adversely affect Lyons' sales of copyrighted toys, clothes, and videotapes.

The district court attempted to skirt the problem by stressing the unique nature of the allegedly infringing work in this case: the evidence in the record showed that unlike, say, a toy, the adult-sized costumes at issue were always bought or rented outside the presence of children. Thus, the court held, the child's perspective was irrelevant because the adult "is the one who would actually decide whether to obtain the costumes." We find this distinction unpersuasive on two levels. First, such logic would practically obliterate the consideration of children's viewpoints in any case involving protected works that are directed towards children, as many such works are purchased as "surprise" gifts -- and thus necessarily outside of the child's presence. More fundamentally, the district court's distinction ignores the fact that, even though children were not present during any of the purchases or rentals testified to at trial, their impressions and views were the primary influences on the purchase decision. As the district court explicitly found, "many of these adults rented these costumes with the intent of confusing their young children." Thus, the fact that the adults were the nominal purchasers of the costumes is irrelevant for the purposes of the substantial similarity inquiry; the adults' actions only confirm that children are the intended audience with respect to both the Barney character and the Duffy costume. Moreover, the entertainment of the children with the costumes could have a direct economic impact on later wishes, later purchases, and general good will in an economic sense -- a potentially detrimental impact against which the Copyright Act seeks to protect.

We recognize the risk that by considering the perspectives of young children in the substantial-similarity analysis, the potential liability for infringement might tend to broaden, given the reduced ability of young children to distinguish between objectively different

16

items and concepts. But this concern is largely ameliorated by the first, objective prong of the substantial similarity inquiry, which requires the court to find, as a matter of law, that the works are extrinsically similar. Moreover, to the extent that liability is broadened, it represents the reality of the confusion and actual economic loss to the copyright owner.

In sum, in conducting its infringement analysis with respect to works targeted at children, the district court should have considered the perspectives of those children. The fact that children were not actually present when their parents purchased or rented the costumes did not eliminate the need to consider the children's perspectives because both Morris Costumes and those parents foresaw that the costumes would be used to entertain children. Accordingly, we vacate the court's judgment on this copyright issue and remand with instructions that the district court reevaluate the disregarded evidence in light of this opinion.

B

For similar reasons, we also vacate the district court's finding against Lyons on its trademark claims brought under 15 U.S.C. §§ 1114 and 1125. A plaintiff asserting an infringement claim under the Lanham Act must prove that it has a valid, protectable trademark and that the defendant is infringing its mark by creating confusion, or a likelihood thereof, by causing mistake, or by deceiving as to the attributes of its mark. See 15 U.S.C. §§ 1114, 1125; Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc., 130 F.3d 88, 91 (4th Cir. 1997). In determining whether the plaintiff has proven a likelihood of confusion, we consider, among other factors, "(1) the strength or distinctiveness of the plaintiff's mark, (2) the similarity of the two parties' marks, (3) the similarity of the goods and services the marks identify, (4) the similarity of the facilities the two parties use in their businesses, (5) the similarity of advertising used by the two parties, (6) the defendant's intent, and (7) actual confusion." Petro Stopping Ctrs., 130 F.3d at 91 (citing Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984)). The importance and relevance of each factor will, of course, vary from case to case. See id. Nevertheless, we have indicated that the seventh factor -- actual confusion -- is often paramount. When the plaintiff's mark is strong and the defendant's

17

use of a similar mark "has actually confused the public, our inquiry ends almost as soon as it begins." Sara Lee, 81 F.3d at 467.

The district court found that Lyons owned valid trademarks in the Barney character. But it determined, after undertaking an analysis of each of the Pizzeria Uno factors, that Lyons had not demonstrated a likelihood of confusion between the Duffy costume and the Barney character. It reached its conclusion, however, only after disregarding most of the evidence of actual confusion, the paramount factor in the analysis. Although the court stated that "[t]here is no evidence on which to support a finding concerning actual confusion of children," ample evidence presented at trial would have supported such a finding. As we noted above, the principal at an elementary school testified that when she wore the Duffy costume at a school rally, the children shouted "Barney. Barney. Barney," and parents testified that when they rented the Duffy costume for their children's birthday parties, the children believed that the person dressed as Duffy was in fact Barney. In addition, Lyons offered newspaper clippings that evidenced actual confusion between Duffy and Barney, not only by the children who were the subject of the articles, but by the reporters themselves, who erroneously described Duffy as "Barney."

Despite initially admitting that evidence, the district court's final opinion dismissed it as "unreliable hearsay." If the district court disregarded this evidence because it was hearsay, we believe that this conclusion was erroneous. Lyons did not offer the children's statements or the newspaper articles to prove the truth of the matter asserted -- i.e., that the persons wearing the Duffy costume were in fact Barney -- but rather merely to prove that the children and the newspaper reporters expressed their belief that those persons were Barney. This was direct evidence of the children's and the reporters' reactions and not hearsay. Accordingly, it could not have been excluded as such. See Fed. R. Evid. 801(c) (limiting the definition of hearsay to statements offered "to prove the truth of the matter asserted"); cf. Fed. R. Evid. 803(1) (creating an exception to the hearsay rule, regardless of the availability of the declarant, for a statement about "an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter").

Because such evidence was highly probative of actual confusion and the existence of actual confusion is often dispositive to a trade-

18

mark infringement analysis, see Sara Lee, 81 F.3d at 467, we also vacate the district court's judgment as to the Duffy-related trademark claim.

IV. State law claim

On its state law claim, Lyons contends that federal trademark and copyright infringement amount to per se violations of the North Carolina Unfair and Deceptive Trade Practices Act (the"UDTPA"), N.C. Gen. Stat. § 75-1.1, and that the district court's failure to find such a per se violation was error. The UDTPA provides a cause of action to competitors for "[u]nfair methods of competition in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). But to read the statute to create per se liability for violations of federal law would expand its scope beyond the apparent intent of the North Carolina legislature. Cf. HAJMM Co. v. House of Raeford Farms, Inc., 403 S.E.2d 483, 492 (N.C. 1991) ("[T]he Act is not intended to apply to all wrongs in a business setting"). To be sure, the North Carolina statutes do render a violation of state trademark law a per se violation of § 75-1.1, see N.C. Gen. Stat. § 80-12, but Lyons has not proven such a violation, as the North Carolina trademark statute forbids infringement only of marks registered with the State, see id. § 80-11. And given that the legislature saw fit to state explicitly that state-law trademark infringement is a per se violation of the UDTPA, it surely would have enacted a similar provision relating to federal-law trademark and copyright infringement if it had believed that violations of those acts also constituted per se violations of the UDTPA.

Lyons contends, in the alternative, that the district court clearly erred when it found that Morris Costumes had not committed unfair trade practices in attempting to deceive the public into believing that the NDC, Hillary, and Duffy costumes were in fact representations of the Barney character. See generally Harrington Mfg. Co. v. Powell Mfg. Co., 248 S.E.2d 739, 746 (N.C. Ct. App. 1978) (noting that one method of unfair competition that falls within the meaning of the North Carolina statute is "the `passing off' of one's goods as those of a competitor").

While sufficient evidence exists in the record to support the district court's finding that the infringing activities were not taken with the

19

intent that the public would be deceived as to the true origin of the costumes,**3** that finding alone does not appear to immunize the defendants from the UDTPA claim. See Marshall v. Miller, 276 S.E.2d 397, 403 (N.C. 1981) ("If unfairness and deception are gauged by consideration of the effect of the practice on the marketplace, it follows that the intent of the actor is irrelevant. Good faith is equally irrelevant. What is relevant is the effect of the actor's conduct on the consuming public. Consequently, good faith is not a defense to an alleged violation of G.S. 75-1.1"); accord Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000).

Accordingly, we vacate the district court's judgment on the UDTPA claim and remand for further proceedings.

## V. Attorneys fees

Finally, Lyons contends that the district court abused its discretion in awarding Amy Morris Smith attorneys fees under§ 505 of the Copyright Act, 17 U.S.C. § 505, and § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). The decision to award fees in "exceptional" cases is generally committed to the "considered discretion" of the district court. See Ale House Mgmt., 205 F.3d at 144. But in this case, the district court appears to have based its fee award at least in part upon the proposition that Lyons' claims were time-barred. Because we have held that determination to be erroneous, at least in part, we also vacate the district court's award of fees to Smith. We leave to the court on remand the task of determining whether, in light of our discussion of the applicable statutes of limitations and laches, an award of fees to Smith remains appropriate.

## VI. Summary

In sum, with regard to the NDC and Hillary costumes, we reverse the district court's ruling that all of the claims were barred by the statute of limitations; we reverse the ruling that any claims were barred

_____

**3** As we noted above, employees of Morris Costumes told Lyons' investigator that the store did not have a Barney costume. Morris Costumes also placed a sign at the store explicitly stating that Hillary "should not be confused with Barney."

by laches; we affirm the finding that the infringements were not willful; and we reverse the denial of injunctive relief. On the Duffy-related claims, we vacate the district court's judgment and remand for further consideration in light of the legal principles set out in this opinion. With respect to the state-law unfair competition claim, we vacate and remand. And finally, we vacate the district court's award of attorneys fees to Amy Morris Smith and remand for further consideration.

<u>AFFIRMED IN PART, REVERSED IN PART,</u>
<u>VACATED IN PART, AND REMANDED</u>

21