**PALMETTO BUILDERS
AND DESIGNERS,
INC., Plaintiff,**

v.

**UNIREAL, INC. d/b/a UniReal Construction Co., Jack Nickol, Sharren Nickol, Roy Keller and Barbara Keller, Defendants.**

No. CIV.A. 8:04–22193–13.

United States District Court,
D. South Carolina,
Greenwood Division.

Oct. 22, 2004.

Frank S Holleman, III, Wyche Burgess Freeman and Parham, Greenville, SC,

John C Moylan, III, Matthew T Richardson, Wyches Burgess Freeman and Parham, Columbia, SC, for Palmetto Builders and Designers Inc, plaintiff.

Clarence Rauch Wise, Wise and Tunstall, Greenwood, SC, for Unireal Inc dba UniReal Const Co, Jack Nickol, Sharren Nickol, Roy Keller, Barbara Keller, defendants.

## ORDER

GEORGE ROSS ANDERSON, District Judge.

This matter is before the Court on Plaintiff's motion for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. Plaintiff Palmetto Builders and Designers, Inc. ("Palmetto Builders") sought to enjoin Defendants Unireal, Inc. d/b/a UniReal Construction Co. ("Unireal"), Jack and Sharren Nickol, and Roy and Barbara Keller (collectively "Defendants") from copying, reproducing, possessing, altering, selling, advertising, distributing, infringing, disclosing, or otherwise using copyrighted architectural plans. Plaintiff also sought to enjoin the construction of two houses that, along with the architectural plans, infringe on Plaintiff's copyrights. This Court finds that the Defendants violated the Plaintiff's valid copyrights and grants Plaintiff's motion for preliminary injunction as set forth below.

## BACKGROUND

Palmetto Builders holds the exclusive rights of certain copyrighted architectural plans in the Savannah Lakes Village, South Carolina and has been assigned all rights and claims to enforce these rights and the copyrights against infringements.

Defendant Unireal is a builder and developer doing business as UniReal Construction in McCormick, South Carolina on

the lakefront development called Savannah Lakes Village. Through its business, Unireal advertises, markets, builds, and sells homes and the designs for homes in McCormick, South Carolina.

In July 2002, Palmetto Builders obtained the exclusive rights to the copyrighted house plans of Cooper Homes and Cooper Communities in the Savannah Lakes Village, South Carolina. Under the construction agreement with Cooper Homes dated July 5, 2002, not only was Palmetto Builders given the exclusive right to use the house plans, but they also agreed to protect those copyrights from infringement and unauthorized use. The copyrighted plans are registered with the United States Copyright Office and have Certificates of Registration VA 711–478 for the house plan named "Wedgewood" and VA 1–133–719 for the house plan named "Newcastle". In an agreement signed in September 2004, Palmetto Builders was assigned all rights and claims to enforce the copyrights against infringements in the Savannah Lakes Village and specifically against these Defendants.

In October 2003, Defendants Jack and Sharren Nickol approached, met, and discussed with Palmetto Builders the possibility of using the copyrighted design, the Wedgewood, for a new home at Savannah Lakes Village, South Carolina. From November 2003 to February 2004, Palmetto Builders worked with the Nickols and made certain personal changes to the Wedgewood plan.

After February and for about a month, the Nickols ceased contacting Palmetto Builders. Palmetto Builders later discovered that the Nickols took Palmetto Builders' Wedgewood plan to Defendant Unireal, who used without permission or authority the copyrighted house plan for the design and construction of the Nickols' new home at Savannah Lakes Village. In addition, Unireal had advertised their new construction for the Nickols in the local newspaper, including a drawing of the elevation and the floor plan in the full-page ad.

While the construction of the new house was still only at the footing stage, Palmetto Builders notified the Nickols of their copyright violation by certified letter dated April 22, 2004. Palmetto Builders received no response to the letter. Palmetto Builders also notified Defendant Unireal by telephone, during which conversation Unireal refused to cease or resolve the copyright infringement, implying that such copying was regularly done. At the time of the preliminary injunction hearing, Unireal's Wedgewood copy was nearly complete.

In 2003, Defendants Roy and Barbara Keller approached, met, and discussed with Palmetto Builders the possibility of using Palmetto Builders house plan called the "Newcastle" for their new home at Savannah Lakes Village, South Carolina. Palmetto Builders worked with the Kellers from August 2003 to May 2004 and made certain personal changes to the Newcastle plan.

Again, the Kellers ceased contact for some time, and Palmetto Builders then discovered that the Kellers had taken the copyrighted Newcastle plan to Defendant Unireal, without permission, and Unireal had once again used copyrighted house plans for the design and construction of a new home at Savannah Lakes Village. In addition, just as they had done with the Nickols' house, Unireal advertised their new construction for the Kellers in another full-page ad in the local newspaper, complete with drawings of the proposed elevation and floor plan.

Palmetto Builders notified the Kellers of their copyright violation by certified letter, dated June 17, 2004, but the Kellers did not respond to this letter. Palmetto Build-

ers filed this lawsuit and a motion for a preliminary injunction on September 10, 2004, seeking to stop Defendants' use of their copyrighted plans and to enjoin the completion and advertising of the infringing homes.

### LAW

### I. General Preliminary Injunction Standard

The general standard for granting a preliminary injunction under Rule 65(a) calls for the district court to perform a "balance of hardships" test as set forth in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193 (4th Cir.1977):

> It is sufficient [to grant the motion] if the court is satisfied that there is a probable right and a probable danger, and that the right may be defeated, unless the injunction is issued, and considerable weight is given to the need of protection to the plaintiff as contrasted with the probable injury to the defendant.

*Id.* at 193 (alteration in original) (internal quotations omitted).

*Blackwelder* sets forth four factors to be considered by a trial court in deciding whether to grant a preliminary injunction: "(1) the likelihood of irreparable harm to the plaintiff if the injunction is denied, (2) the likelihood of harm to the defendant if the injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir.2004). Under the general preliminary injunction standard, the first step requires a balancing of the first two factors. The necessary level of inquiry at the next step, success-on-the-merits, depends upon how decided the imbalance of harms is. The final step is to consider the public interest.

### II. Preliminary Injunction in the Context of Copyright Infringement

In deciding motions for preliminary injunctions in the context of copyright law, a lower standard of proof is applied. "Under Fourth Circuit precedent, if a plaintiff establishes a prima facie case of copyright infringement, a court is 'entitled to presume that ... [the plaintiff] could show both probable likelihood of success on the merits and irreparable harm.'" *National Medical Care, Inc. v. Julian L. Espiritu, MD.*, 284 F.Supp.2d 424, 431 (S.D.W.Va. 2003) (quoting *Service and Training Inc. v. Data General Corp.*, 963 F.2d 680, 690 (4th Cir.1992)). The First Circuit has stated that the rationale for this presumption stems from the unique, expressive nature of information protected by the Copyright Act.

Thus, in copyright cases, a plaintiff who can establish a prima facie case of infringement wins both the balance of hardships test and the likelihood of success on the merits inquiry. *Service and Training Inc.*, 963 F.2d at 690 ("Once [the plaintiff] established a *prima facie* claim of copyright infringement, the district court was entitled to presume that [plaintiff] could show *both* probable likelihood of success on the merits *and* irreparable harm." (emphasis added)); *see also, Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2nd Cir.1985); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3rd Cir.1983). As the First Circuit has concluded, "[t]here is, therefore, no need actually to prove irreparable harm when seeking an injunction against copyright infringement." *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir.1988).

### A. Prima Facie Copyright Infringement

In order to establish a prima facie case of copyright infringement, a plain-

tiff must prove: (1) that he owns a valid copyright, and (2) that the defendant engaged in unauthorized copying. *Nelson–Salabes, Inc. v. Morningside Dev., Inc.* 284 F.3d 505, 513 (4th Cir.2002). A certificate of copyright registration is prima facie evidence of ownership of a valid copyright. 17 U.S.C. § 410(c)(2002); *Serv. & Training*, 963 F.2d at 688. A plaintiff may prove unauthorized copying either by direct evidence of copying or by creating a presumption of copying through indirect evidence. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir.2001).

Palmetto Builders has established both elements of a prima facie case of copyright infringement. The copyright certificates for the Wedgewood and Newcastle house plans are "prima facie evidence of the 'validity of the copyright and the facts stated in the certificate.'" *Adobe Systems, Inc. v. Brenengen*, 928 F.Supp. 616, 618 (E.D.N.C.1996) (citing 17 U.S.C. § 410(c)); *Serv. & Training*, 963 F.2d at 688.

█ Palmetto Builders has also established that the Defendants engaged in unauthorized copying. Not only does a side-by-side comparison of the plans and photographs show a substantial similarity, but Palmetto Builders has actually demonstrated direct evidence of copying. Because it is usually difficult for plaintiffs to show direct evidence of copying in infringement cases, they must often rely on circumstantial evidence. *Towler v. Sayles*, 76 F.3d 579, 581–82 (4th Cir.1996). A plaintiff can create a presumption of copying by establishing that the defendant had access to the work in question and that the defendant's work is substantially similar. *Lyons*, 243 F.3d at 801. In this case, however, the Defendants actually admitted that they copied the plans. The affidavit of Kenneth Betler, the only evidence submitted by Unireal in opposition to a preliminary injunction, admits that "[p]rior to

the construction of the home for the Nickols, they provided me with a flyer of the floor plan for a home named Wedgewood provided by Cooper Homes." Furthermore, when Plaintiff notified Unireal by telephone that their construction of a home for the Nickols was based on a copyrighted plan, Unireal's response implied that such copying was done regularly.

Even without this direct evidence, the Defendants' access to the copyrighted plans and their substantial similarity to Unireal's plans creates a presumption of copying. Palmetto Builders has submitted the architectural plans to the court that were given to the Nickols and the Kellers during their collaboration with Palmetto Builders. These documents are marked with the name of the plan (Wedgewood and Newcastle, respectively), the name of the client ("Jack and Sharren Nickol" and "Roy and Barbara Keller"), and Palmetto Builders' copyright designation. A side-by-side comparison of those plans show that they are substantially similar to the plans for the homes built by Unireal.

## B. Defendants Have Not Rebutted the Presumption of Irreputable Harm

█ Defendants argue that monetary damages will be adequate compensation for the Plaintiff following a trial on the merits, and that the potential harm to Defendants outweighs the harm to the Plaintiff. However, as discussed above, the Fourth Circuit has decided that a prima facie case of copyright infringement creates a presumption of irreparable harm. *Serv. & Training*, 963 F.2d at 690. This presumption is based on the nature of copyright infringement injury, which may not be redressed at the conclusion of litigation:

[T]he commercial value of the copyright owner's tangible expression, appropriat-

ed by an infringer, may be lost by the time litigation is complete. Furthermore, monetary recovery at that point may be inadequate to redress the harm. *Concrete Mach. Co.*, 843 F.2d at 611.

In addition, Defendant Unireal has not only used Palmetto Builders plans without authorization to build infringing homes, but they have used copies of the plans to advertise for their own business in full-page ads in the local newspaper. Plaintiff, as a consequence, continues to lose business, goodwill, and potential customers on a daily basis. "When the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir.1994). Defendants were notified of their infringement very early in the construction process, and they ignored the opportunity to mitigate the harm and any of their own damages. Defendants are asking this Court to permit the magnitude of their violation to shield them from the enforcement of the copyright laws. "It would be incongruous to hold that the more an enterprise relies on copyright infringement for survival, the more likely it will be able to defeat the copyright owner's efforts to have that activity immediately halted." *Concrete Mach. Co.*, 843 F.2d at 612. "The size of the infringer should not be determinative of the copyright holder's ability to get prompt judicial redress." *Id.* (citing *Apple Computer Inc.*, 714 F.2d at 1255).

This Court finds that Palmetto Builders has successfully established a prima facie case of copyright infringement. The evidence submitted by the Defendants, and the arguments of their counsel, are insufficient to overcome the presumptions created by Plaintiff's evidence.

Further, because the constructed homes constitute infringing copies of the Plaintiff's copyrighted works, they cannot be lawfully resold without the Plaintiff's permission. Under 17 U.S.C. § 106(3), a copyrighted article may be sold only by the owner of the copyright. Any sale by another party without the owner's permission constitutes an act of infringement. The only exception to this rule exists under 17 U.S.C. § 109(a), which permits the resale of a copyrighted article by a buyer who received a valid *non-infringing* copy of the work. This is known as the "first sale" doctrine. An *infringing* copy, therefore, does not fit within the "first sale" doctrine embodied in 17 U.S.C. § 109(a) and cannot be resold without the resale causing an additional act of infringement. The homeowners, the Nickols and Kellers, own houses that are infringing copies. Thus, without express permission by the Plaintiff, any sale of the houses by them— or by any subsequent owner—will constitute an act of infringement for which the copyright owner could bring suit. To fully enforce its rights, the copyright owner would have to bring a new lawsuit every time one of the houses was sold. One of the reasons for equitable relief is to prevent such a multiplicity of lawsuits. For this reason, too, the injunction is not only appropriate but indeed necessary. *See American International Pictures, Inc. v. Foreman*, 576 F.2d 661, 664 (5th Cir.1978) ("Conversely, even an unwitting purchaser who buys a copy in the secondary market can be held liable for infringement if the copy was not the subject of a first sale by the copyright owner. Thus, unless title to the copy passes through a first sale by the copyright owner, subsequent sales do not confer good title."); *In re Valley Media, Inc.*, 279 B.R. 105, 136 (Bankr.D.Del.2002) ("If the first sale of the [copy] in which the copyrights are fixed is transacted without the permission of the copyright holder or

its exclusive licensee, that seller and all subsequent sellers are liable for infringement."); *Microsoft Corporation v. Software Wholesale Club, Inc.,* 129 F.Supp.2d 995, 1002, 1006 and n. 8 (S.D.Tex.2000) (finding liability on "innocent" resellers of illegal copies as a matter of law, citing the rule of *American International Pictures, Inc. v. Foreman* ); *Microsoft Corp. v. Harmony Computers and Electronics,* 846 F.Supp. 208, 212–213 (S.D.N.Y.1994) (Even an unwitting purchaser who buys a copy in the secondary market can be held liable for infringement if the copy was not the subject of a first sale by the copyright holder; unless title to the copy passes through a first sale by the copyright holder, subsequent sales do not confer good title).

### III. Form of Injunction

Plaintiff's motion for a preliminary injunction is granted. Defendants are hereby ORDERED:

1. to cease using the Plaintiff's copyrighted architectural plans, the Wedgewood and the Newcastle, in any way;

2. to refrain from using any of Palmetto Builders' copyrighted house plans in the future for construction, advertisement, a starting point for any architectural drawing, or any other purpose;

3. not to post any names or signs on the property of the two infringing houses with Defendants' names or identifying the houses as being built by or for the Defendants;

4. not to advertise in any way that these houses are being built by or for the Defendants;

5. to immediately stop construction on the "Newcastle" house being built for the Kellers, but Defendants may be permitted to resume construction on the Kellers' house if proposed changes to the Kellers' house will sufficiently alter the house to such a degree that it no longer violates

Plaintiff's copyrights, and if this Court approves those proposed changes. Based purely on economic reasons and because the Wedgewood-infringing house being built for the Nickols is nearly complete, and the Nickols are ready to move in, this Court will not enjoin its completion. However, Defendants should not consider this a denial of relief for the Plaintiff, and Defendants are warned about their copyright infringement of the Wedgewood plan.

6. Defendants are also ordered not to sell or transfer the infringing houses to third parties without the Plaintiff's permission.

7. In connection with this injunction, Plaintiff will file a $10,000 bond.

IT IS SO ORDERED.