**GUILLOT–VOGT ASSOCIATES, INC.**

v.

**HOLLY & SMITH, et al.**

**Civ. A. No. 93–1400.**

United States District Court,
E.D. Louisiana.

April 4, 1994.

---

Thomas Frances Gardner, Douglas A. Kewley, Gardner & Kewley, PLC, Metairie, LA, for Guillot–Vogt Associates, Inc.

Kenneth L. Ross, T. Jay Seale, III, Victor Eugene Pregeant, Seale, Macaluso, Daigle & Ross, Hammond, LA, for Holly & Smith, Architects.

Michael E. Wanek, Hulse, Nelson & Wanek, New Orleans, LA, for LeBlanc & Assaf and Associates, Inc. and David Assaf, III.

Richard P. Ieyoub, Louisiana Dept. of Justice, Div. of Risk Litigation, James Carl Hrdlicka, Louisiana Dept. of Justice, Baton Rouge, LA, David Anthony Dalia, New Orleans, LA, for Louisiana State, Dept. of Facility Planning and Control.

LIVAUDAIS, District Judge.

## RULING ON MOTIONS

This copyright matter came on for hearing on a previous day on the motions of defendants, State of Louisiana Department of Facility Planning and Control ("State") and Holly & Smith Architects ("Holly & Smith"), to dismiss plaintiff's complaint, or for summary judgment, and on the motion of plaintiff, Guillot–Vogt Associates, Inc. ("GVA"), for partial summary judgment.

## I. Background

In 1989, the State of Louisiana, through its Department of Facility Planning and Control, entered into a written contract with Apatini Architects, which later became known as Paul Apatini, Architect ("Apatini"). The contract was for Apatini to design roof and fascia repairs to the Slidell Vo–Technical Institute (the "Project"). Apatini, in turn, entered into an oral agreement with GVA for GVA to design for Apatini the mechanical and electrical portions of the Project. However, no contract was executed between the State and GVA.

When the Project was about 65% complete, Apatini submitted plans to the State for comment and review (the "65% submission"). The 65% submission included fifteen sheets which had been prepared by GVA (the "Engineering Plans"). The Engineering Plans were issued to Apatini on or about March 6, 1992. The Plans bore the title blocks of both Apatini and GVA, and were stamped by GVA engineers.

On or about March 15, 1992, shortly after making the 65% submission, Apatini advised the State that his failing health precluded him from completing the Project, and he asked the State to assign the Project to another contractor. The State thereafter assigned the Project contract to Holly & Smith Architects.

At the time of the assignment to Holly & Smith, the State had paid Apatini in full through the level of completion. However, as of April 13, 1992, Apatini still owed GVA $7,900 for work performed through the point of the 65% submission.[1] At the time of the assignment, GVA informed both the State and Holly & Smith that GVA was still owed $7,900 by Apatini.

Holly & Smith contacted GVA around June 16, 1992 and requested that GVA assist Holly & Smith in completing the drawings required for the Project. However, GVA declined the request because both the State and Holly & Smith had refused to pay the $7,900 balance owed to GVA by Apatini.

The State then instructed Holly & Smith to have a reproducible copy of the Engineering Plans made, which Holly & Smith did on or about June 24, 1992. The State further

---

1. Apatini had already paid GVA $16,237.99.

instructed Holly & Smith to remove or obliterate the Apatini and GVA titleblocks and stamps on the Plans, and replace them with Holly & Smith's own. After doing as instructed by the State, Holly & Smith made copies of the plans bearing its titleblocks.

Holly & Smith then retained LeBlanc & Assaf and Associates, Inc., Consulting Engineers ("LeBlanc & Assaf") to review the Engineering Plans and make whatever changes were necessary or desired. LeBlanc & Assaf made some revisions to the Engineering Plans, and on instructions from Holly & Smith, LeBlanc & Assaf placed its titleblock and engineering stamp on the Engineering Plans. After copying the revised Plans, LeBlanc & Assaf delivered the revised Engineering Plans to Holly & Smith who in turn made several more copies of the revised Plans. These copies were distributed to the State, various permitting authorities, contractors, and other third parties. GVA never granted permission for the defendants to use, alter, revise or copy the sheets GVA submitted in the 65% submission.

On June 29, 1992, GVA mailed a copyright application to the United States Copyright Office for the Engineering Plans GVA had provided to Apatini. The application resulted in the issuance of a copyright certificate for the Plans effective June 30, 1992.

## II. Analysis

A motion to dismiss for failure to state a claim upon which relief can be granted will succeed only if the plaintiff can prove no set of facts which would entitle him to relief. *Garrett v. Commonwealth Mortgage Corp. of America,* 938 F.2d 591, 593 (5th Cir.1991). In determining the potential merit of a plaintiff's claim for purposes of a Rule 12(b)(6) motion, the Court must accept all material allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. *Id.*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In opposing a properly supported motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleadings, but the [nonmoving] party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.". Fed. R.Civ.P. 56(e). In determining the existence of a genuine issue for trial, a court must view the evidence in the light most favorable to the nonmovant, and any reasonable doubt as to the existence of a genuine issue must be resolved in favor of the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). If, on a motion to dismiss pursuant to Rule 12(b)(6), the court considers matters outside of the pleadings, the motion is treated as one for summary judgment. Fed.R.Civ.P. 12(b)(6).

### A. GVA's Claims

GVA claims that the defendants' acts of copying, revising and distributing the drawings originally prepared by GVA constituted violations of GVA's exclusive rights in those drawings as provided by the Copyright Act, 17 U.S.C. § 101 *et seq.* Specifically, GVA claims that its copyright issued June 30, 1992 gives it the

> exclusive rights to do and to authorize any of the following:
>
> > (1) to reproduce the copyrighted work in copies ...;
> >
> > (2) to prepare derivative works based upon the copyrighted work;
> >
> > (3) to distribute copies of the copyrighted work ...; * * *

17 U.S.C. § 106. GVA seeks to enjoin the defendants from further using its copyrighted drawings, and seeks the return of all GVA's drawings and derivative works prepared therefrom. GVA further claims that the infringement by the defendants was willful and intentional thereby entitling GVA to statutory damages, pursuant to 17 U.S.C.

§ 504(c)(2), in the amount of $100,000, as well as attorney's fees.

## B. Defendants' Motion to Dismiss or for Summary Judgment

 The State, joined by Holly & Smith, filed motions to dismiss or for summary judgment claiming that:

(1) the scope of the Copyright Act does not protect the type of drawings prepared by GVA;

(2) the State has an absolute right to proceed with alterations to State buildings regardless of copyright protection;

(3) the contract for the architectural services, as well as State law, grant ownership of the GVA drawings to the State;

(4) the GVA drawings are merely functional and utilitarian and therefore not worthy of copyright protection;

(5) the GVA drawings were based on preexisting drawings provided by the State and therefore are not original works of authorship as required by the Copyright Act;

(6) the defendants acted in good faith in using the GVA drawings thereby negating any claim for statutory damages or attorney's fees based on willful and deliberate infringement; and

(7) any infringement which may have occurred commenced prior to the registration date of the copyright certificate thereby precluding recovery of statutory damages or attorney's fees.

### 1. Scope of Copyright Protection

The Copyright Act provides that

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated.... Works of original authorship include the following categories:

 * * * * * *

(5) pictorial, graphic, and sculptural works;

 * * * * * *

(8) architectural works.

17 U.S.C. § 102(a). It is undisputed that GVA holds a certificate of copyright for the drawings in question here. However, the existence of such a certificate is not conclusive as to the validity of such copyright, but rather, is merely prima facie evidence as to its validity. 17 U.S.C. § 410(c). The effect of such certificate is to place the burden of proof on the alleged infringer to disprove the validity of the copyright. *Harris Market Research v. Marshall Marketing,* 948 F.2d 1518, 1526 (10th Cir.1991); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985). ·

 As their first ground for dismissal, defendants argue that while the 1990 Amendment to the Copyright Act extended protection to architectural works, it did not do so for engineering works. Defendants' argument is off the mark.

The 1990 Amendment to the Copyright Act was intended to protect "architectural works," defined as the "design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." 17 U.S.C. §. 101. However, the protection afforded by the 1990 amendment is directed primarily at protecting the intellectual property existing in the design of a physical building. For example, prior to the 1990 Amendment, a person could go to a building, take measurements, make sketches, or otherwise record the building, and replicate the building without obtaining permission from the original designer of the building. The 1990 Amendment was meant to prevent such use of intellectual property without permission.

 The Court interprets the 1990 Amendment primarily as providing previously lacking copyright protection to *physical* architectural works, not drawings of such works. Indeed, drawings, whether of architectural works, or otherwise, have long enjoyed copyright protection. *See, e.g., Schuchart & Associates v. Solo Serve Corp.,* 540 F.Supp. 928, 943 (W.D.Tex.1982) ("Architectural and engineering drawings fall within the subject matter of copyright"); *Del Madera Properties v. Rhodes & Gardner, Inc.,*

637 F.Supp. 262, 263 (N.D.Cal.1985), *aff'd*, 820 F.2d 973 (9th Cir.1987) ("As a general rule, ... technical drawings are copyrightable as 'pictorial' or 'graphic' works under 17 U.S.C. § 102(a)(5)"). Even the legislative history of the 1990 Amendment, an excerpt of which the State has attached to its memorandum in support of the motion to dismiss, provides that "[p]rotection of architectural plans, drawings, and models as pictorial, graphic, or sculptural works under section 102(a)(5), title 17, United States Code, is unaffected by [the Amendment]," and two separate copyrights can exist, "one in the architectural work (section 102(a)(8)), the other in the plans or drawings (section 102(a)(5))." H.R.Rep. No. 101–735, 101st Cong., 2d Sess. 19 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6935, 6950.

Thus, the 1990 Amendment did not affect the copyrightability of drawings, regardless of their type. Whether the nature of the GVA drawings is architectural, technical, or otherwise, they can be the subject of copyright protection as pictorial or graphic works under 17 U.S.C. § 102(a)(5) if the other requirements of the Act are satisfied. Consequently, defendants' argument that the drawings are not within the scope of copyright because they are not architectural is without merit.

### 2. The State's Right to Alter its Buildings

█ In a twist on its first argument, the State next argues that 17 U.S.C. § 120(b) prevents GVA from asserting any copyright rights because the Project involves an alteration to an existing structure. Would that it were so.

Section 120 of the Copyright Act is entitled "Scope of exclusive rights in architectural works," and provides in pertinent part:

(b) **Alterations to and destruction of buildings.**—Notwithstanding the provisions of section 106(2), the owners of *a building embodying an architectural work* may, without the consent of the author or copyright owner of the architectural work, make or authorize the making of alterations to such building, and destroy or authorize the destruction of such building.

17 U.S.C. § 120(b) (emphasis added). This provision of the Act is meant to allow the alteration of a *building* which embodies a copyrighted architectural work without first obtaining approval from the copyright owner. Thus, a building owner would not be forced to keep a building, or a particular design feature of a building, which may no longer be needed simply because another party owns the copyright to the structure.

However, this section is not intended to nullify copyright protection in *drawings* as being asserted by GVA here. The drawings in question in the instant case are not a building, and as GVA conceded, they are not any other form of architectural work. Thus, section 120(b) is plainly inapplicable to the instant case, and defendants' argument in this regard must fail as well.

### 3. Ownership of the Drawings

█ The State argues that GVA has no claim for infringement because the contract for the Project, as well as applicable state law, provide that the drawings prepared by GVA became the property of the State. The State entered into a prime design contract with Apatini for the Project. A portion of that contract, Article 11, pertaining to the ownership of documents, provides in part:

11.1 Drawings and Specifications are, and shall remain, the property of the Owner [the State] whether the Project for which they are made is executed or not. Such documents may be used by the Owner to construct one or more like projects without the approval of, or additional compensation to, the Designer. The Designer shall not be liable for injury or damage resulting from re-use of drawings and specifications if the Designer is not involved in the re-use project. Prior to re-use of construction documents for a project in which the Designer is not also involved, the Owner will remove and obliterate from such documents all identification of the original Designer, including name, address and professional seal or stamp.

This provision of the prime design contract tracks the applicable provisions of the Louisi-

ana public bid law.[2] The State further claims that "[g]enerally, form design subcontracts promoted and distributed by the American Institute of Architects provide that the design subcontract is subject to the provisions of the prime design contract." Thus, the State argues, because the contract for the Project, as well as state law, provide for ownership of all documents by the State, GVA has no claim for copyright infringement. *See Joseph J. Legat Architects v. United States Development Corp.*, 625 F.Supp. 293, 296–97 (N.D.Ill.1985) (noting that contract provisions can affect the scope of copyright protection).

GVA argues because there was no contract between the State and GVA, the provisions of Article 11 do not apply. Indeed, the State does not infer that it did have a contract with GVA. Furthermore, while the State's contract with Apatini was in writing, the contract between Apatini and GVA was oral. GVA argues persuasively that the State cannot bind GVA to the State's contract with Apatini without fulfilling Apatini's obligations to GVA.

■ GVA further contends that Apatini could not have properly sold the State the Engineering Plans because, as a result of breaching its contract with GVA, Apatini did not own said plans. *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir.1990) (where a party breaches a contract, it cannot later claim the benefits due under that contract). Any attempt by Apatini to

sell GVA's plans to the State, argues GVA, was in essence an involuntary transfer. With respect to involuntary transfers, the Copyright Act provides that:

> When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect except as provided under Title 11 [pertaining to Bankruptcy].

17 U.S.C. § 201(e). Because the Court finds that the State has failed to demonstrate as a matter of law that GVA was bound by the contract between the State and Apatini,[3] or that GVA voluntarily transferred the drawings, the State's argument that it owned the drawings at issue must fail.[4]

### 4. GVA's Drawings are Merely Functional and Utilitarian

■ The State next argues that the GVA drawings were merely functional and utilitarian and therefore not worthy of copyright protection as an architectural work. As discussed above, the State's belief that the GVA drawings are architectural works, and its continued reliance on provisions governing the copyright of architectural works, are inappropriate. Regardless, however, the limi-

---

2. La.R.S. 38:2317 provides in pertinent part:

A. Any and all plans, designs, specifications, or other construction documents resulting from professional services paid for by any public entity shall remain the property of the public entity whether the project for which they were prepared was constructed or not. Except as otherwise provided herein, such documents may be used by the public entity to construct another like project without the approval of, or additional compensation to, the design professional.

B. The designer shall not be liable for injury or damage resulting from any re-use of plans, designs, specifications, or other construction documents by a public entity, if the designer is not also involved in the re-use project.

\* \* \* \* \* \*

E. Prior to the re-use of construction documents for a project in which the designer is not also involved, the public entity shall remove

and obliterate from the construction documents all identification of the original designer, including name, address, and professional seal or stamp.

3. Despite the State's claim that the oral subcontract is subject to the provisions of the prime design contract, the State cites no authority for such claim.

4. The Court also notes that the GVA drawings, if prepared pursuant to an oral contract, cannot be considered a "work made for hire" which is defined as

(2) a work specially ordered or commissioned for use as a contribution to a collective work, ... if the parties *expressly agree in a written instrument signed by them* that the work shall be considered a work made for hire.

17 U.S.C. § 101 (emphasis added).

tation of copyrightability with respect to items which are merely functional or utilitarian in design applies primarily to the *physical object*, not drawings of such objects.

Title 17, section 101 of the United States Code provides in pertinent part that:

"Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, ..., and technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately, and are capable of existing independently of, the utilitarian aspects of the article.

This provision stands for the proposition that certain design features of a physical article are not copyrightable if the design features cannot exist independently of the article. It does not stand for the proposition that the *rendering* of a utilitarian article is devoid of copyright protection. Indeed, the cases discussing copyrightability of useful articles discuss protection of the *articles themselves*, as opposed to drawings of the articles. *See, e.g., Fabrica Inc. v. El Dorado Corp.,* 697 F.2d 890, 893–94 (9th Cir.1983) (denying copyright protection on a folder used for selling carpet because artistic features inseparable from utilitarian function); *Ellison Educational Equipment v. Accu–Cut Systems, Inc.,* 769 F.Supp. 1090, 1101–02 (D.Neb.1991) (denying copyright protection on silhouette forms used for educational purposes). The defendants have failed to cite any cases supporting their position that drawings are not copyrightable simply because they are utilitarian or mechanical in nature. *But see Kern River Gas Transmission v. Coastal Corp.,* 899 F.2d 1458, 1464 (5th Cir.), *cert. denied,* 498 U.S. 952, 111 S.Ct. 374, 112 L.Ed.2d 336 (1990) (copyright on map indicating proposed corridor of gas pipeline denied because idea of gas pipeline corridor could not be expressed in any other meaningful way and

copyright would therefore allow monopoly on idea).

Because GVA is seeking to assert copyright protection for its drawings, rather than for the physical articles which they depict (e.g., air conditioning ducts, electrical wires, etc.), and because the State has not shown that GVA's drawings were the only meaningful way to depict such articles, the defendants have failed to demonstrate that GVA's copyright is invalid because of the mechanical or utilitarian nature of the drawings.

### 5. GVA's Drawings are Based on Pre-existing Drawings

■ The State next argues that the drawings at issue were prepared by GVA after GVA consulted earlier drawings provided by the State. Thus, the State claims the GVA drawings are not original works or authorship protected by copyright. However, the State concedes that whether GVA's works are in fact derivative works "can only be determined through further discovery." Furthermore, the Court notes that "[t]he issue of authorship ... is a factual question for resolution by the [fact-finder]." *Del Madera Properties,* 637 F.Supp. at 264.

Finding that a genuine issue exists as to whether the GVA drawings are in fact original works of authorship, this aspect of the State's motion is without merit.

### 6. Defendants' Good Faith

■ The defendants argue that any claims based on intentional and willful infringement should be dismissed because they at all times acted in good faith and in conformity with their perceived contractual and statutory obligations. Specifically, the defendants claims that they acted in accordance with Article 11 of the prime design contract and the Louisiana public bid law. The State further contends that because it is not a professional engineer, it is not subject to the engineering rules of practice which GVA says the State violated.

While the State appears correct with respect to its potential liability as a professional engineer, the Court nonetheless finds that the issues of good faith and willfulness are

not generally ones which are amenable to summary disposition. Furthermore, even if the Court were willing to decide such issues on a motion for summary judgment, the evidence presented by the defendants is insufficient to find in their favor. Consequently, this aspect of defendants' motion must be denied.

### 7. Infringement Commencing Prior to Registration

GVA's complaint seeks statutory damages in the amount of $100,000 as well as attorney's fees pursuant to the Copyright Act for the alleged willful infringement its copyright.

Title 17, United States Code section 504(a), provides that a copyright infringer may be liable for either actual damages and additional profits, or statutory damages. In the case of willful infringement, "the court in its discretion may increase the award of statutory damages to a sum of not more than $100,-000." 17 U.S.C. § 504(c)(2).

With respect to attorney's fees, the Copyright Act provides that

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. However, the Act further provides that

> no award of statutory damages or attorney's fees, as provided by sections 504 and 505, shall be made for:
>
> \* \* \* \* \* \*
>
> (2) any infringement of copyright commenced after the first publication of the work and before the effective date of the registration, unless such registration is

made within three months of the first publication of the work.

17 U.S.C. § 412.

 Defendants argue that because registration of the copyright occurred June 30, 1992—more than three months from the date of first publication [5]—and because the first act of alleged infringement occurred no later than June 24, 1992, then section 412 bars GVA's claims for attorney's fees and statutory damages.

GVA acknowledges that an act of infringement by copying occurred as of June 24, 1992, and concedes that it cannot recover attorney's fees or statutory damages for that act of infringement. Moreover, GVA concedes that it is not entitled to attorney's fees or statutory damages resulting from that one act of copying, even if the defendants made additional copies of those particular drawings after June 30, 1992.

Nevertheless, GVA argues that many other independent acts of infringement occurred after June 30, 1992 which entitle GVA to attorney's fees and statutory damages. Specifically, GVA argues that the Copyright Act creates a number of separate and distinct exclusive rights for copyright owners. Simply because an infringement may have concerned one of those rights, GVA contends that the other rights are not affected or waived. *See Columbia Pictures Industries v. Redd Horne*, 749 F.2d 154, 158 (3d Cir. 1984) ("[s]ince the rights granted by section 106 are separate and distinct, and are severable from one another, the grant of one does not waive any of the other exclusive rights"). Because only the exclusive right to reproduce the copyrighted drawings was infringed by Holly & Smith's June 24, 1992 copying of the drawings, GVA argues that the distinct exclusive rights relating to distribution and preparation of derivative works were not infringed prior to registration, and therefore statutory damages and attorney's fees are recoverable as to infringement of those rights.

---

**5.** The date of first publication as reflected in the copyright application prepared by GVA is March 6, 1992.

In reviewing the cases cited in the memoranda submitted, as well as through its own research, the Court has been unable to find any cases on point with GVA's theory. Indeed, every case that this Court has reviewed or been referred to has denied the award of statutory damages where pre-registration infringement occurred and registration was more than three months after publication. For example, in *Mason v. Montgomery Data, Inc.*, 741 F.Supp. 1282, 1286 (S.D.Tex.1990), the court stated

> By enacting sec. 412, Congress sought to establish registration as a prerequisite to the extraordinary remedy of statutory damages and provided that this remedy is to be denied where infringement commences before registration. The only exception Congress provided was to allow for a grace period to take care of newsworthy or suddenly popular works which could be infringed before the copyright owner has a reasonable opportunity to register his claim.

The *Mason* court stated that the availability of statutory damages only for registration within three months of publication was meant to provide an incentive for prompt registration which would disappear if an owner could obtain statutory damages for infringements occurring after a belated registration. *Id.* at 1286–87. *See also Whelan Associates, Inc. v. Jaslow Dental Laboratory*, 609 F.Supp. 1325, 1331 (E.D.Pa.1985) ("Cases seem to recognize that a simple discrete act of infringement bars attorney's fees under 17 U.S.C. § 412.... Unquestionably, one of the purpose of the present copyright act was to encourage registration") (citations omitted). *See also* annotations to 17 U.S.C.A. § 412.

■ Although, the Court has found no case subscribing to GVA's theory regarding the availability of statutory damages and attorney's fees if the pre-registration infringement was of another "type," neither has it found any case directly on point with the instant one. Because GVA's argument appears to be technically correct, and because all unresolved issues must be viewed in the light most favorable to the nonmovant in a 12(b)(6) motion, the Court is reluctant to dismiss GVA's claim for statutory damages and attorney's fees at this time. Although the defendants may have the better of the argument, the Court cannot grant their motion to dismiss the statutory damages or attorney's fees claims.[6]

## C. GVA's Motion for Partial Summary Judgment

GVA moves for partial summary judgment on the issue of liability claiming that all the defendants infringed the exclusive copyright of GVA on the Engineering Plans. However, as stated above, the Court cannot say as a matter of law that the drawings prepared by GVA are original works of authorship. *See also* Code Depo. at 11–20. As such, a genuine issue of fact exists as to authorship sufficient to rebut the presumption of copyright validity. Accordingly, GVA's motion for partial summary judgment must be denied.

Accordingly,

**IT IS ORDERED** that the motions of defendants, State of Louisiana Department of Facility Planning and Holly & Smith Architects, to dismiss or for summary judgment (Rec. Docs. 33 & 35) be and hereby are **DENIED.**

**IT IS FURTHER ORDERED** that the motion of plaintiff, Guillot–Vogt Associates, Inc., for partial summary judgment (Rec. Doc. 38) be and hereby is **DENIED.**

The parties are further advised that a telephone conference will be conducted by the Courtroom Deputy of this Court for the purpose of selecting pre-trial conference and trial dates.

---

6. In addition, the Court notes that although statutory damages may be awarded up to a sum of $100,000, the district court is afforded almost exclusive discretion, between the minimum and maximum statutory limit, in determining the amount actually awarded. *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1017 (7th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). Such an amount could reflect the amount the Court perceives to be the actual damages suffered by the copyright owner.