**NATIONAL MEDICAL CARE, INC., dba Fresenius Medical Care North America, Plaintiff,**

v.

**Julian L. ESPIRITU, Jr., MD., et al., Defendants.**

**No. CIV.A. 2:03–0020.**

United States District Court, S.D. West Virginia, Charleston Division.

Sept. 30, 2003.

Mark D. Clark, Jackson Kelly, Charleston, WV, Heather S. Heidelbaugh, Christopher S. Channel, Burns White & Hickton, Pittsburgh, PA, for Plaintiff and Counter–Defendant National Medical Care, Inc.

Steven P. McGowan, Paul K. Reese, Marc R. Weintraub, Steptoe & Johnson, Charleston, WV, for Defendant and Cross–Claimant Julian L. Espiritu, Jr., M.D., for Defendant and Cross–Claimant Greater Charleston Dialysis, PLLC, for Defendant and Cross–Claimant J & F Properties, LLC.

Paul L. Weber, David V. Moore, Moore & Weber, Charleston, WV, James W. Creenan, Waymar, Irvin & McAuley, Pittsburgh, PA, for Defendant and Cross–Defendant Uner Gokcen, Architect, for Defendant and Cross–Defendant Architurk/Medarch, Inc.

William deForest Thompson, Hurricane, WV, for Movant Paul W. Tennant, AIA.

Michael W. Carey, Carey Scott & Douglas, Charleston, WV, for Defendant John Wolfe, for Defendant Wolfe Construction Company, Inc.

## ORDER

GOODWIN, District Judge.

Pending before the court is the motion of the plaintiff, National Medical Care, Inc., d/b/a Fresenius Medical Care North America (Fresenius), for preliminary injunction [Docket 4]. For the reasons discussed below, this motion for preliminary injunction is **GRANTED** in part and **DENIED** in part.

## I. Findings of Fact

The court **FINDS** that the facts of this case are as follows. Fresenius is the world's largest provider of dialysis products and services for patients with chronic kidney failure. On October 16, 2000, Fresenius registered certain technical drawings for the internal components of dialysis centers with the United States Copyright Office. Reg. Number VAU 477385. These technical drawings are known as the "Standard Details." Fresenius's Standard Details consist of 108 architectural, plumbing, mechanical, and electrical component drawings that depict things such as medical cabinets, work stations, dialysis counters, and coat racks. In 1998 and 1999, defendant architect Uner Gokcen and his architectural firm, Architurk Medarch, provided architectural services on two Fresenius dialysis facilities. One of theses facilities is located in Hurricane, West Virginia, and the other is located in Charleston, West Virginia. Defendant John Wolfe and his company, Wolfe Construction Company (Wolfe Construction), were hired as general contractors for both the Hurricane and Charleston facilities. Defendant Gokcen was given a copy of Fresenius's Standard Details to use in designing Fresenius's Hurricane and Charleston facilities, and defendants Wolfe and Wolfe Construction were provided complete sets of the architectural plans for the Hurricane and Charleston facilities, which included Fresenius's Standard Details.

Defendant Julian L. Espiritu, Jr., M.D. and his company, defendant J & F Properties, LLC, hired Gokcen, Architurk Medarch, Wolfe, and Wolfe Construction to design and build a dialysis facility in South Charleston, West Virginia to be called Greater Charleston Dialysis, PLLC (GCD). Gokcen prepared a set of "Construction Drawings" for GCD and filed them with the City of South Charleston. In preparing GCD's Construction Drawings, Gokcen copied portions of Fresenius's Standard Details, primarily relating to cabinetry. The sheets containing these copied drawings, sheets A–9, A–10, and A–11, were clearly labeled "Design Development Drawings. Not for Construction." Copies of these drawings were present at the construction site. In late 2002, Charlie

Gater, a project manager for Fresenius, examined GCD's Construction Drawings. After comparing GCD's Construction Drawings to Fresenius's Standard Details, he concluded that GCD's drawings contained copies of the Standard Details.

Wolfe contracted Chandler Plywood Products to supply the cabinetry for GCD. The cabinetmaker who built GCD's cabinets, Steve Hatcher, had worked with Wolfe on numerous projects over the previous 15 years. Hatcher's testimony is very credible. According to Hatcher, on his first visit to the project site, he saw the infringing Construction Drawings, but was told by an employee of Wolfe Construction that the drawings weren't to be used. Thereafter, he obtained a copy of the floor plan, visited each room in the facility, made the necessary measurements, and noted the dimensions and configuration of the cabinets to be built. As is his practice when working with Wolfe, Hatcher initially drew the cabinetry using dimensions, configurations, and designs standard to previous medical facility projects. Over the course of the project, Hatcher visited the project site on several occasions, prepared drawings of the cabinetry, submitted the drawings to Wolfe for review, and revised the drawings as requested by Wolfe and Dr. Espiritu. Hatcher prepared final drawings of the cabinetry and GCD's cabinetry was built according to Hatcher's final drawings.

## II. Procedural History

On January 8, 2003, Fresenius filed a one-count complaint alleging copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*, naming Dr. Espiritu, GCD, Gokcen, and Architurk Medarch as defendants. Fresenius has since amended its complaint twice to add defendants J &

F Properties, Wolfe, and Wolfe Construction, and to include additional theories of relief: vicarious copyright infringement by Dr. Espiritu and Wolfe, and contributory copyright infringement by Wolfe and Wolfe Construction. In its complaint, Fresenius demands statutory damages, actual damages, infringer's profits, money damages, and a permanent injunction.

Simultaneous to the filing of the complaint, Fresenius made a Motion for a Temporary Restraining Order and Preliminary Injunction. In this motion, Fresenius requested the following relief: (1) an order requiring all defendants to cease any use of Fresenius's Standard Details or any other confidential information owned by Fresenius, (2) an order requiring all defendants immediately to inventory and return all blueprints, architectural drawings, computer disks, or other confidential information owned by Fresenius, (3) an order precluding the defendants from opening their kidney dialysis facility in South Charleston until they remove all allegedly infringing portions of the facility, (4) an order permanently enjoining defendants from copying, reproducing, possessing and/or disclosing any and all improperly obtained copyrighted and/or confidential information owned by Fresenius, and (5) any further relief deemed just and proper by the court. On January 24, 2003, the court issued a temporary restraining order requiring all defendants to account for and return all of Fresenius's copyrighted and confidential information, including all copies of the Standard Details, and prohibiting all defendants from any use or copying of Fresenius's copyrighted and confidential information.[1] The court denied without prejudice Fresenius's Motion for a Temporary Restraining Order insofar as it

---

1. Defendants' counsel was permitted to retain one copy of the Standard Details and copies of the allegedly infringing plans.

sought to preclude the opening of GCD until all allegedly infringing items were removed, but the court stated that Fresenius could renew its request for the removal of infringing items at the preliminary injunction hearing. The court held hearings on Fresenius's preliminary injunction motion on June 19, June 30, and August 28, 2003, Fresenius has renewed its request for the removal of allegedly infringing items, and the matter is now ripe for decision.

### III. Standard for Obtaining for a Preliminary Injunction

In deciding whether to issue a preliminary injunction in a copyright infringement case, the court must consider both the general preliminary injunction standard and the specific preliminary injunction standard applicable to infringement cases.

### A. General Preliminary Injunction Standard

■ A district court typically undertakes a "balance-of-hardship" test to determine whether a party's motion for preliminary injunction should be granted. *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 194–95 (4th Cir.1977). Under the "balance of hardship" test, the court must consider the following four factors: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." *Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 812 (4th Cir.1991). The comparison of the first two factors, the likelihood of harm to each party, is the most important consideration. *Id.* The plaintiff must demonstrate harm that is " 'neither remote nor speculative, but actual and imminent.' " *Id.* (quoting *Tucker Anthony Realty Corp.*

*v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989)). Once the court has balanced the harm to each party, it must determine the degree to which the plaintiff is required to demonstrate a likelihood of success on the merits. *Manning v. Hunt,* 119 F.3d 254, 263 (4th Cir.1997). If the balance of the harms "tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Direx Israel,* 952 F.2d at 812 (quoting *Rum Creek Coal Sales, Inc. v. Caperton,* 926 F.3d 323, 359 (4th Cir.1991)). If the balance of harms tips away from the plaintiff, the plaintiff must make a stronger showing of probable success on the merits. *Id.* Only after the court has "balanced the hardships, determined the required showing of likelihood of success on the merits and analyzed that likelihood" does the court analyze the final factor, the public interest. *Manning,* 119 F.3d at 264.

### B. Preliminary Injunction in the Context of Copyright Infringement

■ In the context of copyright law, however, a lower standard of proof is applied to motions for preliminary injunctions in this circuit. Under Fourth Circuit precedent, if a plaintiff establishes a prima facie case of copyright infringement, a court is "entitled to presume that ... [the plaintiff] could show both probable likelihood of success on the merits and irreparable harm." *Serv. & Training, Inc. v. Data Gen. Corp.,* 963 F.2d 680, 690 (4th Cir.1992). Although the Fourth Circuit has not made clear its rationale for this presumption, the First Circuit has stated that the presumption in favor of copyright plaintiffs stems from the unique, expressive nature of the information protected by

the Copyright Act. *Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 611 (1st Cir.1988) (noting that a special test should apply to injunctive relief copyright actions because "copyright protects the unique and somewhat intangible interest of creative expression. Unlike most property rights, the value of this interest is often fleeting."). In the case of literary, musical, or artistic works, "the commercial value of the copyright owner's tangible expression, appropriated by an infringer, may be lost by the time litigation on the claim is complete. Furthermore, monetary recovery at that point may be inadequate to redress the harm." *Id.* Even if the creator of an artistic, literary, or musical piece ultimately succeeds in a copyright infringement lawsuit, the damage has been done when the public is already deceived as to the true authorship of the work. *See id.*

The presumption of probable likelihood of success and irreparable harm can be rebutted. *Richmond Homes Mgmt. v. Raintree, Inc.,* 862 F.Supp. 1517, 1527 (W.D.Va.1994), *rev'd on other grounds by* 66 F.3d 316 (4th Cir.1995) (unpublished). This rebuttal may be achieved by producing evidence that the defendant devised a work of independent creation. *Id.* If the defendant succeeds in rebutting the initial presumption, "the burden of persuasion remains with plaintiff to establish by a preponderance of the evidence that the defendant actually copied the material." *Id.* The presumption may also be rebutted if the defendant can show that the plaintiff delayed in bringing a preliminary injunction action. *Richard Feiner & Co. v. Turner Entm't Co.,* 98 F.3d 33, 34 (2d Cir.1996). "An unreasonable delay suggests that the plaintiff may have acquiesced in the infringing activity, or that any harm suffered by the plaintiff is not so severe as to be 'irreparable.'" *Id.*

The court recognizes that the lower standard of proof afforded by this presumption seems appropriate in cases involving certain types of copyright infringement, but the court is doubtful of the presumption's suitability to the facts at hand. Here, the technical drawings and specifications at issue are primarily functional in nature. They contain little artistic or creative expression. The court does not believe that the commercial value of these technical drawings is fleeting, in the sense that the commercial value of a song or a book may be fleeting. The value of the drawings exists in Fresenius's ability to use them in building dialysis centers; comparatively, the value of a song or a book is heavily dependent on retail sales. Consumers may tire of a work quickly, but Fresenius will be able to use its Standard Details as long as it likes. Nevertheless, in the case before the court it is unnecessary to decide whether or not the lower standard of proof applies because the application of the lower standard does not affect the outcome. Therefore, without deciding whether the lower standard should apply to any similar case in the future, the court will apply the lower standard to the facts of this case.

## IV. Discussion

The court must decide, as a matter of law, whether a structure or feature can be an infringing copy of a technical drawing. If a structure or feature can be an infringing copy of a technical drawing, the court must determine whether Fresenius has established a prima facie case of copyright infringement.

### A. Prima Facie Copyright Infringement

In order to establish a prima facie case of copyright infringement, a plaintiff

must prove: (1) that he owns a valid copyright, and (2) that the defendant engaged in unauthorized copying. *Nelson–Salabes, Inc. v. Morningside Dev., Inc.*, 284 F.3d 505, 513 (4th Cir.2002). A certificate of copyright registration is prima facie evidence of ownership of a valid copyright. 17 U.S.C. § 410(c)(2002); *Serv. & Training, Inc.*, 963 F.2d at 688. Fresenius has provided the court with the copyright registration for the Standard Details, and the defendants have not introduced evidence calling the validity of the copyright into question. Therefore, the court **FINDS** that, as of October 16, 2000, Fresenuis owned a valid copyright for the Standard Details as "technical drawings."

A plaintiff may prove unauthorized copying either by direct evidence of copying or by creating a presumption of copying through indirect evidence. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir.2001). Gokcen has stipulated that he copied portions of the Standard Details while preparing GCD's Construction Drawings. This stipulation is direct evidence that Gokcen made unauthorized copies or reproductions of the Standard Details. The defendants have not offered any rebuttal evidence on this point. Therefore, the court **FINDS** that Fresenius has established a prima facie case of copyright infringement as to Gokcen's use of the Standard Details in the Construction Drawings. Accordingly, those portions of the Construction Drawings copied from the Standard Details, sheets A–9, A–10, and A–11, will be considered infringing copies for the purpose of this motion.

Fresenius, however, seeks more than the return of these infringing copies and a prohibition of their further use. Fresenius asks the court to order GCD to remove several cabinets currently used in the facility. To obtain such relief, Fresenius is required to prove that its claim with regard to the cabinets at issue satisfies the standard for obtaining a preliminary injunction. Applying the lower standard, as discussed above, Frensenius must prove that the cabinets are unauthorized copies of the Standard Details.

### 1) As–Built Items Cannot Infringe on a Technical Drawing

Copyright law protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Works of authorship include, *inter alia*, "pictorial, graphic, and sculptural works." *Id.* at § 102(a)(5). The Bernc Convention Implementation Act of 1988 amended the definition of "pictorial, graphic, and sculptural works" to include "technical drawings, including architectural plans." *Id.* at § 101. Although architectural plans can be copyrighted as technical drawings, there is some debate concerning the scope of protection afforded to technical drawings. Before the court can decide whether the cabinets in this particular case infringe on Fresenius's Standard Details, the court must determine whether an as-built structure or feature can infringe on a technical drawings copyright.

A copyright gives the owner the exclusive right to reproduce the copyrighted work. *Id.* at § 106. Anyone who violates this exclusive right infringes on the owner's copyright. *Id.* at § 501(a). The scope of copyright protection, however, is limited in that it does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* at § 102(b). Only the original expression of an idea embodied within a copyrighted work is protected by copyright law. *Demetriades v. Kaufmann*, 680 F.Supp. 658, 662 (S.D.N.Y.1988); *see generally* 1 NIMMER ON

COPYRIGHT §§ 2.03[D], 2.18 (Mellville B. Nimmer & David Nimmer eds., 2003). A patent is required to protect an idea isolated from any original expression. *See* 35 U.S.C. § 101 *et seq.* The standard for obtaining a patent is higher than the standard for copyright because it requires the applicant to demonstrate that the idea is novel. *See Toledo Pressed Steel Co. v. Standard Parts,* 307 U.S. 350, 356, 59 S.Ct. 897, 83 L.Ed. 1334 (1939).

 Architects typically protect their works through copyright because the utilitarian nature of architéctural drawings and buildings makes it difficult for architects to satisfy patent law's novelty requirement. *See Robert R. Jones Assocs. v. Nino Homes,* 858 F.2d 274, 278 (6th Cir. 1988). Until 1990, architectural works could be registered only as "technical drawings" under the category of "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a)(5). In 1990, Congress enacted the Architectural Works Copyright Protection Act (AWCPA), which extended copyright protection to "architectural works" as a new category of authorship. 17 U.S.C. 102(a)(8); 1 Nimmer, *supra,* § 2.20.[2] The primary effect of the AWCPA is to provide copyright protection to physical architectural works. *Guillot–Vogt Assoc., Inc. v. Holly & Smith,* 848 F.Supp. 682, 686 (E.D.La.1994). The enactment of the AWCPA did not affect the scope of copyright protection afforded to architectural works registered only as technical drawings. *See id.* (quoting H.R.Rep. No. 101–735, at 19 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6935, 6950). A work can obtain protection as both an architectural work and a technical drawing only if the work is registered under both categories. *See* 37 C.F.R. § 202.11(c)(4).

The copyright protection afforded to architectural plans registered as technical drawings is subject to certain qualifications. 1 Nimmer, *supra,* 2.08[D][2][a]. The Copyright Act "does not afford, to the owner of a copyright in a work that portrays a useful article as such, any greater or lesser rights with respect to the making, distribution, or display of the useful article so portrayed than those afforded to such works under the law . . . in effect on December 31, 1977." 17 U.S.C. § 113(b). A "useful article" is defined as an article that has "an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Id.* at § 101. The cabinets portrayed in the Standard Details are clearly useful articles; therefore, under 17 U.S.C. § 113(b), Fresenius has statutory copyright protection in the cabinets depicted in the Standard Details "only to the extent that such protection was recognized by law prior to January 1, 1978." *See Jones Assocs.,* 858 F.2d at 278.

 The starting point for analyzing the scope of copyright protection extended to works depicting useful articles is the seminal case of *Baker v. Selden,* 101 U.S. 99, 11 Otto 99, 25 L.Ed. 841 (1879). In *Baker,* the plaintiff had published a book outlining a unique bookkeeping system which included blank forms that illustrated how to apply the system. *Id.* at 100. The defendant created duplicates of the forms illustrated in the books. *Id.* According to the plaintiff, the forms sold by the defendant infringed on the plaintiff's copyright in the book. The Court held that copy-

**2.** "Architectural work" is defined as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101.

right protection extends to the particular explanation (otherwise termed expression) of an art or work, but not to the use of the art or work described in the copyrighted material. *Id.* Further, the Court held that, if an art taught by a copyrighted work requires the use of methods and diagrams illustrated in the work, such use does not infringe on the copyright. *Id.* at 103. *Baker* bases its distinction between expression and use on the fundamental differences between copyright and patent law. *Richmond Homes,* 862 F.Supp. at 1527. Copyright law protects an author's original expression, but does not give the author the exclusive right to use the ideas expressed in the author's work. *Baker,* 101 U.S. at 102, 11 Otto 99. An author may only obtain protection for the ideas expressed by obtaining a patent. *Id.*

As of the enactment of the AWCPA, the circuits had not developed a uniform method of applying *Baker* in the context of architectural plans, and given that most cases are now decided under the AWCPA, little thought has been given to the subject. Generally, courts have found that an unauthorized copy of an architectural plan infringes on a technical drawing copyright. *Richmond Homes,* 862 F.Supp. at 1527; *Imperial Homes Corp. v. Lamont,* 458 F.2d 895, 899–900 (5th Cir.1972); *Demetriades,* 680 F.Supp. at 662. Further, most courts agree that copying a structure depicted in plans, without copying the plans themselves, is not copyright infringement. *Richmond Homes,* 862 F.Supp. at 1527; *Acorn Structures, Inc. v. Swantz,* 657 F.Supp. 70, 74 (W.D.Va.1987) *rev'd on other grounds by* 846 F.2d 923 (4th Cir. 1988) (unpublished); *Desilva Constr. Corp. v. Herrald,* 213 F.Supp. 184, 195 (M.D.Fla. 1962); *Muller v. Triborough Bridge Auth.,* 43 F.Supp. 298, 300 (S.D.N.Y.1942). The copyright implications when a party uses an infringing copy to build a structure are less clear. *Richmond Homes,* 862 F.Supp. at 1527. In an attempt to make up for a

perceived insufficiency in copyright law's protection of architectural structures, some courts have calculated damages so as to include profits realized from the construction of works using infringing copies of technical drawings. *See Jones Assocs.,* 858 F.2d at 280. Other courts have found that a technical drawings copyright simply does not give the owner the exclusive right to build the structure depicted in the plan, and a copyright owner has no claim against another who builds the structure from an infringing plan. *DeSilva,* 213 F.Supp. at 195.

The AWCPA was enacted specifically to provide clear copyright protection to architectural structures, H.R.Rep. No. 101–735, at 19 (1990), *reprinted in* 1990 U.S.C.C.A.N. 693537. At the time of enactment, Congress thought such protection was necessary to bring the United States Copyright Act into compliance with the requirements of the Berne Convention. Congress chose a definition of "architectural work" that includes all building designs while explicitly excluding individual standard features. 17 U.S.C. § 101. This exclusion of individual standard features indicates that Congress did not intend to extend copyright protection to as-built individual standard features. The distinction drawn by Congress between building designs and individual standard features makes sense given that individual standard features are primarily utilitarian in nature.

 The court now **FINDS** that an as-built structure or feature cannot be an infringing copy of a technical drawing. Copyright protection only extends to as-built structures when the copyright is registered under the AWCPA. The Standard Details are registered only as technical drawings, and therefore, the protection afforded by Fresenius's copyright in the Standard Details does not extend to as-built structures, regardless of whether

those structures have been built with reference to infringing copies of the Standard Details.

### 2) GCD's Cabinets Are Not Copies of the Standard Details

 Even assuming that a copyrighted technical drawing could be infringed upon by an as-built structure or feature, Fresenius has failed to prove that the cabinets installed in GCD are unauthorized copies of the Standard Details. A plaintiff may prove copying either by direct evidence of the physical act of copying, or, as is more common, by creating a presumption of copying through indirect evidence. *Lyons P'ship*, 243 F.3d at 801. The direct evidence presented at the hearing suggested that Wolfe and his cabinetmaker designed the cabinets independently. In order to prove infringement using indirect evidence, Fresenius was required to demonstrate that the defendant(s) had access to the Standard Details, and that the allegedly infringing works were substantially similar to the Standard Details. *See id.* Given that a copy of the infringing Construction Drawings was present at the work-site, the defendants clearly had access to the Standard Details. The closer question is whether GCD's cabinets are substantially similar to Fresenius's cabinets as depicted in the Standard Details.

 Substantial similarity is evaluated under another two-part analysis. *See Lyons P'ship*, 243 F.3d at 801. First, the "extrinsic" portion of the analysis requires the court to determine whether the works are extrinsically similar "because they contain substantially similar ideas that are subject to copyright protection." *Id.* Second, the court must inquire whether the works are intrinsically similar "in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work." *Id.* The consideration of intrinsic similarity "requires the court to inquire into the total concept and feel of the works, but only as seen through the eyes of the ordinary observer." *Id.* (quoting *Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731, 733 (4th Cir.1990)) (internal quotations omitted). When the work is intended for a particularized audience, the "ordinary observer" is a member of that intended audience rather than the general public. *Id.* The court considers the copyrighted work in this case to be intended for a particularized audience rather than the general public. Thus, the court must consider the Standard Details from the viewpoint of the particularized audience—i.e., architects, builders, and general contractors. The court concedes that the drawings at issue are extrinsically similar to one another; however, the court is not convinced that the plans meet the intrinsic similarity test.

 When considering whether one item is intrinsically similar to another in the context of copyright law, a court must compare the expressive content of each item. *See Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606 (1st Cir.1988). The term expressive content refers to those aspects of an item that are separately identifiable from the item's utility. *See Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 143 (4th Cir.2000). The spectrum of copyrighted works contains works, such as video games, that exhibit a high degree of expressive content and works, such as the technical drawings here, that exhibit a relatively low degree of expressive content. These latter sorts of works have been termed "thin" by the Supreme Court. *See Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). " 'It would seem to follow analytically that more similarity is required when less protectable matter is at

issue. Thus, if substantial similarity is the normal measure required to demonstrate infringement, "supersubstantial" similarity must pertain when dealing with "thin" works.' " *Transwestern Publ'g. Co. v. Multimedia Mktg. Assocs.*, 133 F.3d 773, 776 (10th Cir.1998) (quoting Nimmer, *supra*, § 13.03).

The Standard Details are "thin" works. Like all cabinets, the medical cabinets depicted in the Standard Details consist of a combination of drawers, cupboards, counters, shelves, and features.[3] Further, certain aspects of the Standard Details, such as the use of plastic surfaces, are dictated by the cabinet's use in a medical facility. The court **FINDS** that each Standard Detail is a combination of utilitarian components, and the expressive content in an individual Standard Detail exists in the manner in which the components are arranged. *See Richmond Homes*, 862 F.Supp. at 1524. Therefore, a work will only be considered substantially similar to the design depicted in the Standard Details if the particular configuration of the allegedly infringing work is nearly an exact copy of the design's configuration.

Fresenius argues that the following items found at GCD are substantially similar to technical drawings in the Standard Details: (1) the isolation room cabinet, (2) the reception window, (3) the nurse's station, (4) the dialysis cabinet, (5) the office cabinetry, and (6) the coat rack. The court **FINDS** that the configuration of each of these items is markedly different from the cabinets depicted in the Standard Details. First, the dimensions of GCD's cabinets, drawers, and counters do not conform to the dimensions portrayed in the Standard Details. Using the allegedly infringing Prep Cabinet as an example: (1)

the second upper cabinet from the left is 17 inches, rather than the 24 inches as required by the Standard Details, (2) the far right upper cabinet is 27 inches rather than 24 inches as required by the Standard Details, and (3) the drawers installed in the base station are 14 inches rather than 18 inches as required by the Standard Details. Second, the components in GCD's cabinetry do not conform to the components portrayed in the Standard Details. For example, the nurse's station as built has four drawers underneath the counter and a forty-eight inch counter adjacent to the station, neither of which are shown in the Standard Details. Third, the more decorative aspects of GCD's cabinets are distinct from the cabinets depicted in the Standard Details. Illustrative of this point is GCD's allegedly infringing reception window. Whereas the Standard Details show a carpet half-way up the wall and oak trim, GCD's reception window does not have carpet on the wall and uses a chair rail molding below the window.

In addition, Fresenius argues that the following features indicate that GCD's cabinetry was built with reference to the Standard Details: (1) a valve box located inside of a cabinet, (2) counters covered in post-form laminate, (3) an oak trim window frame around a nurse's work station, and (4) a cabinet with side-by-side sinks separated by a formica sink divider. The court FINDS that GCD's cabinetry utilized these features, but that the these features consist of individual utilitarian components not protected by copyright. All of these features, except the wood trim, serve a functional purpose in a medical environment. A sink divider is used to separate clean sinks from dirty sinks, and counter

---

**3.** Fresenius cabinets also contain complex systems designed to process water, acid, and bicarbonate solutions. The court's substantial similarity analysis focuses on the simpler aspects of the cabinets (components, dimensions, and features) because Fresenius based its substantial similarity claim on these aspects.

tops made of laminate help the staff maintain a sterile environment. The placement of the valve box inside a cabinet allows easy access to the valve box for repairs. Moreover, Wolfe had used similar sink dividers and counter tops on projects prior to working for Fresenius. Simply put, Fresenius copyright does not allow it to prevent the architects and builders it hires from using utilitarian components and/or common features on future non-Fresenius projects. If Fresenius's copyright were indeed this broad, Fresenius would have nothing short of a monopoly over the professionals needed to build dialysis centers.

Fresenius also argues that an air gap drain and a flush-mounted floor sink installed in GCD infringes on its copyright. The court **FINDS** that air gap drains and flush-mounted floor sinks are common to medical facilities and restaurants, and that, prior to working for Fresenius, Wolfe had installed similar items. Although Fresenius has made further allegations of infringement based on GCD's lack of electrical, mechanical, or plumbing plans and upon the installation of a pre-fabricated emergency shower, the court **FINDS** that these allegations lack merit.

Cabinets are utilitarian objects. Moreover, the function of cabinets in general, and of medical cabinets in particular, requires a high degree of standardization between cabinet designs. When a plaintiff's work admits of only slight variations, "modest dissimilarities are more significant." *Howard v. Sterchi,* 974 F.2d 1272, 1276 (11th Cir.1992). Although the court recognizes that similarities exist between GCD's cabinets and the Standard Details, these similarities consist of individual utilitarian components not protected by copyright law. Given the numerous differences between GCD's cabinets and the Standard Details, the court FINDS that GCD's cabinets are not substantially similar to those depicted in the Standard Details.

### 3) Defendants have Rebutted any Evidence of Copying

▆▆▆ Further, the defendants have rebutted any evidence of copying presented by Fresenius. A defendant can rebut evidence of copying with evidence that the work is an independent creation. *See Richmond Homes,* 862 F.Supp. at 1527. Here, the court **FINDS** that the cabinets were built according to drawings developed independently by Hatcher. Thus, the defendants demonstrated that the cabinets were independently created, and the burden of persuasion rested with Fresenius to prove copying. As discussed above, Fresenius failed to prove copying through direct or indirect evidence, and thus Fresenius failed to meet its burden.

## V. Conclusions

The court **FINDS** that Fresenius is not entitled to the presumption of likelihood of success on the merits and irreparable harm. The basis for this holding is twofold. First, as a matter of law, the court concludes that an as-built structure and/or feature cannot be an infringing copy of a technical drawing. Second, even if a structure or feature could be considered an infringing copy, Fresenius has failed to establish a prima facie case of copyright infringement; and to the extent Fresenius has presented evidence of copying, the defendants have rebutted this evidence with proof of independent creation. Fresenius has not shown that it is likely to suffer harm from GCD's continued use of the cabinets, and the court FINDS that Fresenius will not prevail on the merits against the defendants Julian L. Espiritu, Greater Charleston Dialysis, PLLC, J & F Properties, LLC, John Wolfe, and Wolfe Construction Company, Inc. Further, the court FINDS that currently none of the defendants are in possession of Fresenius's copyrighted or confidential

information. Nevertheless, Fresenius has met its burden in showing that Gokcen infringed on its copyright by copying portions of the Standard Details and submitting the copied portions to the City of South Charleston as GCD's construction drawings. Therefore, the Plaintiff's Motion for a Preliminary Injunction is granted in part and denied in part. The motion is **DENIED** insofar as it seeks a preliminary injunction against defendants Julian L. Espiritu, Greater Charleston Dialysis, PLLC, J & F Properties, LLC, John Wolfe, and Wolfe Construction Company, Inc. The motion is **GRANTED** in so far as it seeks an order permanently enjoining Gokcen and Architurk Medarch Inc. from copying, reproducing, possessing, altering, selling, distributing, infringing, disclosing, or otherwise using Fresenius's copyrighted or confidential information.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and **DIRECTS** the Clerk to post this published opinion at http://www.wvsd.uscourts.gov.